[No. 9144.  Department Two.  January 5, 1911.]

*In the Matter of the Petition of* THE CITY OF EVERETT.
A. D. AUSTIN *et al., Appellants,* v. THE CITY OF EVERETT,
*Respondent.*[1]

MUNICIPAL CORPORATIONS—IMPROVEMENTS—ASSESSMENT OF BENE-
FITS.  An assessment of benefits from the condemnation of land for
street extensions through unplatted property should be set aside
for manifest abuse of discretion, where the commissioners assessed
the unplatted property at about ten times as much as platted prop-
erty, irrespective of its relation to the streets or the benefits re-
ceived, arbitrarily assuming that the same was benefited greatly in
excess of platted property; and it is an abuse of discretion for the
trial judge to select commissioners who will, or influence them to,
make such an assessment.

Appeal from a judgment of the superior court for Snoho-
mish county, Black, J., entered April 2, 1910, upon findings
in favor of the defendant, confirming assessment rolls upon
property benefited by a public improvement, after a hearing
upon consolidated actions before the court without a jury.
Reversed.

*Todd, Wilson & Thorgrimson,* and *Coleman & Fogarty,*
for appellants.

*Benj. W. Sherwood,* for respondent.

PER CURIAM.—This is an appeal by A. D. Austin and six
other owners of property assessed to pay for the extension
of Highland and other streets in the city of Everett, from
the judgment confirming the assessment roll.  Condemnation
proceedings were duly had and judgments entered, fixing the
amounts to be paid for the property taken and damaged.
Thereupon the court appointed one set of commissioners to
make up the assessment rolls on the five streets involved in
the condemnation proceedings.  The five rolls were prepared
and a consolidated hearing had thereon, the assessment rolls

[1]Reported in 112 Pac. 658.

being confirmed as to four of the streets and modified by charging up $485 against the general fund in the case of the other street. The facts being the same in each of the five proceedings, and the legal controversy being the same, the cases were consolidated below, and are so treated here.

The errors upon which appellants rely for a reversal are that their property was not assessed according to benefits, and is charged with more than its proportionate share of the cost of the improvement. From an examination of the record, it appears that the commissioners adopted a plan by which they assessed unplatted property at about ten times as much as platted property, irrespective of its relation to the streets, or to the benefits derived therefrom, arbitrarily assuming that, because the property was unplatted, the benefit was greatly in excess of the platted property, and the assessment should therefore be proportionately greater. This resulted in one case of an assessment of $3 upon one lot, while the unplatted property directly across the street for the same area is assessed sixteen times as much. In other cases the difference is $1.50 a front foot upon platted property upon one side of the street, while upon the other side the assessment is about one-eleventh as much. Another discrimination shows an assessment of $2 a front foot on unplatted lands, while lands immediately north thereof and practically in the same relation to the street are assessed at only twenty-eight cents a front foot. The reasons for this discrimination, we think, will be found in the following portion of the record upon the hearing below:

"Cross-examination by Mr. Sherwood: Q. Mr. Adamson, in giving your opinions on these various assessments in these various districts, you have not taken into consideration at all the fact that these property owners that you claim—who, in your opinion were over-assessed, you have not taken into consideration the fact that they were allowed very large awards for the property condemned and taken as part of these proceedings? Mr. Thorgrimson: I object for the reason it is absolutely immaterial. The Court: . . . I so

announced, then, that if I could do it—I wanted to offset the benefits right there. I said if I could do it—I asked the law of the question, and counsel convinced me, I believe, that I could do it. I believe Mr. McKee was there and asked if he didn't think the land was worth more after it was platted than it was before and he said he thought it was, and I took that as pretty good evidence because it agreed with me, and I announced then that if I could do it I would so declare, and counsel said then it would be the duty of the commissioners to take that into consideration, and I did not instruct these commissioners at all but I did—. Mr. Coleman: Mr. Anderson was present at the time? The Court: I have no doubt he was. I meant that the word should be conveyed to the commissioners because I had seen, in the Colby Avenue district and several other districts, what I thought were wrongs done and I didn't propose to sit up here and see it done while I was judge, so I did take this method of substantially telling the commissioners, although they were not appointed—I meant that they should know about it, that this court was not going to see men, who were really benefited by the opening up of a street, hold up a whole community and gain that much more than they ought to, and I didn't like the allowance of great, big damages and I tried to get out of it. I would have allowed a good deal less. Brother Fogarty didn't agree with me at all, because he was interested in that land and I know he shook his head pretty vigorously, as his habit is, and still I have to—without reference to who they are; I always shut my eyes to who they are when I come to deciding these questions. I felt it was not the right thing to do; so I think, right now, the commissioners ought to take that into consideration in awarding benefits—ought to take into consideration the fact that these people are getting pay for something that, ordinarily, they ought not to get pay for. Mr. Coleman: Don't your Honor think that you are going pretty far to say that you wouldn't stand for more than eighty per cent in this matter? The Court: I don't know but what, if the whole matter came up together, the fixing of damages and the benefits, I would say that the man who was forced to dedicate his street was benefited for the full amount of the land taken, because of the fact that every practical real estate man who has any acreage, if he wants to get the most out of it, he plats it into lots and blocks, and he feels that he is

getting back more by giving away the street than by keeping it.   If I put the question the other way: What would you do with your land to get the most out of it? why, surely, I would dedicate it and plat it with streets and alleys and so I think that is what every sensible man would do with town property. I say this much now because I want counsel to know where the court is drifting in this particular case.   I gave it out—I talked to the city attorney privately and I said to him 'When you recommend commissioners to this court, while I know men differ about this, I have seen so much of what I think injustice to the public done that if they follow out that old idea I will not reappoint them, and I might—if I have power, I will set aside the whole assessment and appoint men that will come more nearly doing what I thought was just.'  So I told —I will let the record show that—I told the city attorney that in recommending men I wanted him to take that into consideration, and that I wanted to let him and the commissioners know that that was my idea.   I had seen injustice done and I thought about it and it worried me and I didn't propose to let it be done any more, so I laid down the general rule, which I intended to influence the commissioners in doing what I think they have done in this case.

"Mr. Sherwood:  As I understand it, then, you overrule the objection?  Mr. Thorgrimson:  I would like to be heard on that a little further before your Honor passes on that. (Argument.)   The Court:  I am willing to let the record show that I tried to influence the commissioners to that extent, because, as counsel knows very well, when I gave the awards I said—they said 'You cannot consider the benefits,' and counsel on both sides agreed to it, and still I wanted to see if I couldn't do it.   Mr. Coleman:  That was a question under the statute.   The Court:  Then they convinced me that they were right, but I was stretching out my arm just as far as I could then, and if I had had my way about it I would have said to Mr. Coleman and Fogarty and some of the other people there, 'You are benefited more than you are damaged and I won't allow you anything.'  That is probably what I would have done if I had any authority, but I didn't have that authority and I figured out that that could be taken care of just in this way, that the commissioners appointed to assess the benefits ought to take that into consideration, that they are getting paid for the land, that the taking away from them

was a benefit to them rather than a damage and that they
ought to take that into consideration, that was the only fair
way that could result.   Now, I am willing to let the record
clearly show that, because, if I am wrong, the supreme court
can say so.   I admit I endeavored to influence the commis-
sioners to the extent that I talked to the city attorney about
it, and I said if these commissioners kept on doing the way
they have been doing in other cases I will not appoint them
and I will set aside the whole assessment roll and I will ap-
point new commissioners that will more nearly carry out the
ideas of the court.   I would have been a little more indignant
about some cases where I have sustained an assessment, and I
furthermore told them if they went onto these side streets
where improvements went and levied very large assessments
that I would set that aside.   I had in mind Colby Avenue,
where I thought a wrong was done a lot of people under the
guise of law, and I didn't propose to do it nor have it done,
as far as I was concerned.   That is the fact and I want the
record—.  Mr. Coleman: The city attorney told me that you
wouldn't stand for more than eighty per cent.   The Court:
I don't think I got down to percentage, but I told him that
that should be considered and if they didn't say that they con-
sidered that I would probably set the whole matter aside and
appoint new commissioners.   I told the city attorney that,
and I announced to all the litigants in court here before that
if I could do it I wouldn't allow these people very large
damages, and Mr. Coleman shook his head very vigorously,
thought I was entirely wrong, but—the Court did influence,
I think, the commissioners.   The commissioners had gone, be-
fore, on the theory 'Well, we will divide this up all up and
down the street.'   Here is a man who has platted his land and
dedicated his land to the public and got nothing for it, and
the man adjoining him that couldn't sell his land at all unless
he did plat it and did dedicate the street, he would make the
other man pay him damages because he was being benefited,
and I didn't think it was fair, didn't think it was just, and
didn't think it was right, and I wanted to stop that practice,
and I figured the only way I could was by the kind of men I
got in as commissioners and whether they would consider the
matter or not, and I did that, although in the particular case
in which I did it I had some pretty close friends whom I knew
were interested directly, but that is the way I believe and that

is what I did, and I did it in the interest of honesty as I look at it and square dealings, and if I am wrong I am wrong, and the record may show just exactly what I did do. I will over-rule the objection. Mr. Thorgrimson: Your Honor over-rules the objection on the ground that it is material, in making these assessments, as to what the different parties whose land was assessed received as awards for the land taken. The Court: Well, probably not stated in that form, but the question of benefits is whether they had any street there be-fore or not and whether a street is given them in front of their own property that they would have to give anyhow if they were going to sell the property. It is in another form— I think the objection should be overruled. Objectors except."

We think it is apparent, without giving other reasons for our opinion, that the court endeavored to, and did, influence the commissioners in fixing their assessments. Each prop-erty owner is entitled to the fair and impartial individual judgment of the commissioners as to the benefits received by his property from the improvement in question, and when he desires to test their assessment in court he is likewise en-titled to a fair and impartial hearing before an unbiased court. It is manifest these appellants had neither. Assess-ment according to benefits is largely a matter of opinion, and while we have often refused to disturb assessments where there was a conflict in the testimony as to the character and extent of the benefits, and have held the assessment roll as handed in by the commissioners and confirmed by the court was conclusive in the absence of fraud or apparent mistake, we have likewise held it will not be so regarded when it appears to have been arbitrarily made, such an assessment being a manifest abuse of the discretion vested in the commissioners. *In re Westlake Avenue*, 40 Wash. 144, 82 Pac. 279.

In the case of *In re Third, Fourth and Fifth Avenues*, 55 Wash. 519, 104 Pac. 799, we said no assessment would be disturbed unless the evidence was so clearly pre-dominating as to indicate that the trial court had lost sight of its judicial discretion in determining its judgment. The

remarks of the trial court, as above quoted, would seem to plainly indicate his mind was not in that equal poise to carefully and considerately weigh the matter before him, and exercise a judicial discretion in arriving at his conclusion.

The order of confirmation is vacated, and the assessment rolls set aside. The cause is remanded with instructions to appoint new commissioners, and prepare new rolls.