[No. 9785. Department Two. December 20, 1911.]

*In re* FIFTH AVENUE AND FIFTH AVENUE SOUTH, SEATTLE. METROPOLITAN BUILDING COMPANY *et al., Appellants,* v. THE CITY OF SEATTLE, *Respondent.*[1]

MUNICIPAL CORPORATIONS—IMPROVEMENTS—ASSESSMENTS—REVIEW. An assessment of special benefits, while a subject for judicial inquiry, will not be set aside on appeal as excessive, unless the evidence so preponderates as to indicate arbitrary action.

SAME—PROPERTY LIABLE—SPECIAL BENEFITS — POWER OF COURT. Under Rem. & Bal. Code, §§ 7790, 7795, 7796, property can only be assessed if specially benefited, and it is not proper to include in an assessment district property that receives merely a general benefit.

SAME—ASSESSMENT ROLL—SPECIAL BENEFITS — EVIDENCE — PRESUMPTIONS. An assessment roll returned by commissioners is admissible as evidence of the benefits received, and that property outside the district was not specially benefited, and overcomes the *prima facie* showing made by a reassessment arbitrarily ordered by the court.

SAME—EVIDENCE—SUFFICIENCY. The unanimous opinion of commissioners that property should be excluded from an assessment district because not specially benefited, is conclusive on the courts, where it appears that the improvement was to gain easier grades and divert travel from the property in question, which was on higher ground and beyond the influence of the special benefits contemplated.

SAME—APPORTIONMENT OF PUBLIC AND PRIVATE BENEFITS—POWERS OF COUNCIL AND COMMISSIONERS—APPEAL—REVIEW. Under Rem. & Bal. Code, §§ 7786, 7787, authorizing the city council to determine whether an improvement shall be made wholly or partly at the expense of abutting property, and § 7790, authorizing commissioners to apportion benefits between the city and abutting owners by a comparison of the public and private benefits to be derived from the

[1]Reported in 119 Pac. 852.

improvement, it is within the power of the council to make the apportionment, and for the commissioners to act only when the council fails to do so; and in any event, the benefit to the public must be a special and not a general benefit, and findings of the court or commissioners are conclusive on appeal.

Appeal from a judgment of the superior court for King county, Ronald, J., entered May 25, 1911, confirming an assessment for street improvements, after a hearing before the court. Affirmed in part and reversed in part.

*Douglas, Lane & Douglas,* for appellant Metropolitan Building Company.

*Bausman & Kelleher,* for appellant Sisters of Charity etc.

*Scott Calhoun* and *William B. Allison,* for respondent.

CHADWICK, J.—This suit involved the reassessment of property within the Fifth avenue and Fifth avenue south regrade projects, in the city of Seattle, and is brought here on the appeal of the Metropolitan Building Association and the Sisters of Charity of the House of Providence. These appeals are taken from an order of the superior court confirming a reassessment made under order and direction of the court, and inasmuch as they involve different propositions, will have to be discussed separately.

Considering first the case of the building association, the north boundary of the assessment district as first fixed by the commissioners was at the south boundary of the first lot south of Seneca street, that point being, as we take it from the record, one block north of the point where work was actually done on the avenue. The property of the appellant abutting on Fifth avenue and contiguous thereto being north of Seneca street was not assessed for benefits. The court refused to confirm this roll, and it was vacated with directions to bring back another roll. Under the reassessment, the limit of the assessment district was extended north to a point slightly beyond Union street and the prop-

erty of the building association was assessed at $1,544.40. It is contended that the reassessment was made under the arbitrary direction of the court, and against the judgment of the commissioners. It is said that the trial court followed and was controlled in his judgment by the case of *Spokane v. Gilbert*, 61 Wash. 361, 112 Pac. 380. That case defines and limits the procedure in this class of cases, and after quoting pertinent statutes, Rem. & Bal. Code, §§ 7790, 7795, 7796, says:

"These statutes clearly give the court power to adjust the assessment between the city and the property owner, so that each one may pay the proportionate share of the cost of the improvement. The court is not bound by the assessment made by the commissioners. In *In re Pike Street*, 42 Wash. 551, 85 Pac. 45, we said: 'The statute give the court power to modify, change, alter, or annul the assessment, and we think it may lawfully find that an improvement is of sufficient general benefit to make a proportion of the cost a general charge against the municipality.' In order to do this, the court must necessarily hear and consider evidence bearing upon such question."

But we do not understand that it was there held that property that was not in fact specially benefited should be assessed, but rather that the amount to be assessed against property within the district and proper to be assessed was an appropriate subject of judicial inquiry; and following a long line of cases, the judgment of the court would not be disturbed or modified unless the evidence so preponderated against the judgment as to indicate an arbitrary disposition on the part of the commissioners or the court. *In re Westlake Avenue*, 40 Wash. 144, 82 Pac. 279; *In re Seattle*, 46 Wash. 63, 89 Pac. 156; *In re Western Avenue*, 47 Wash. 42, 91 Pac. 548; *Seattle v. Felt*, 50 Wash. 323, 97 Pac. 226; *In re Seattle*, 50 Wash. 402, 97 Pac. 444; *In re Pine Street*, 57 Wash. 178, 106 Pac. 755.

But here we are confronted with a question not heretofore decided by this court. Can the court include in its judg-

ment of confirmation property which is not abutting or contiguous to the improvement, and is shown to be beyond the zone of benefit contemplated by the plan? Without holding that it cannot be done—for questions depending upon facts cannot be stated as hard and fast rules of law—we think that the showing here made is not sufficient to sustain the order of confirmation. It will be obvious to any one who reads the special assessment statutes that it was the intent of the legislature to permit the assessment of only such property as was specially benefited (§ 7790), and that general benefits could not be made the basis of a levy. So that §§ 7795 and 7796, quoted in *Spokane v. Gilbert, supra,* must be read with this thought in mind. When so read, it will be seen that it is the duty of the court in inquire whether the property is assessed more or less than it is specially benefited, and unless there is a special benefit the court has no jurisdiction to order its inclusion in the roll. The first roll returned by the commissioners is, in itself, proper to be considered as evidence of the judgment of the commissioners, as well as of the fact that the improvement did not embrace the property of the appellants within the zone of property specially benefited, and is sufficient to countervail the *prima facie* showing which has been held to be made out by the roll under present consideration. *Elma v. Carney,* 4 Wash. 418, 30 Pac. 732; *Seattle v. Smith,* 8 Wash. 387, 36 Pac. 280; *Hamilton v. Chopard,* 9 Wash. 352, 37 Pac. 472.

We come, therefore, to an examination of the testimony. It will be borne in mind that the first roll did not involve the property sought to be charged; and that the court, for the reason that he thought the district was too small or did not include enough territory, ordered a reassessment. A new roll being brought in, a hearing was had. The record shows that the highest point on Fifth avenue is Madison street, and that traffic originating and landing in the territory north of Madison street on Fifth avenue would naturally follow the easier grades to the west, and be carried

over Third and Fourth avenues. It would seem that the point fixed by the first roll as the north limit of the district was a natural dividing point. Mr. Foster, one of the commissioners, testified as follows:

"Q. What was your reason for not crossing [Seneca street] before? A. At that time we felt that the fact that Seneca street offered an accessible grade from Fifth to Fourth avenues, that there existed at that point a diverting influence by reason of that accessible grade between Fifth and Fourth, giving the properties north of Seneca street on Fifth avenue easy access to Fourth avenue and, consequently, we thought that, by reason of that diverting influence, that would be the reasonable place and the logical place in which to fix the limit of the district. Q. And that reason still obtains, does it not? A. Oh, yes, our deliberations have not changed the grades on Seneca street. Q. And traffic will still continue to go down Seneca street instead of going up a grade to Madison and over Fifth; that is your opinion, is it not? A. I take it that much of it will. Q. Yes. A. In other words, I think that the property to the north of Seneca street is not as dependent upon the bettered condition of Fifth avenue as the property to the south of Seneca street."

Mr. Merrifield, another one of the commissioners, testified as follows:

"Q. Then, the present assessment roll is not in your own opinion a fair and equitable one? A. If I had the making of it alone, no. I believe the first roll is the better roll of the two, the way I look at it. . . . Q. This roll does not carry out the suggestions or instructions of the court at the hearing upon the last roll in so far as the extension of the district and the further spreading out and sloping off of the assessment, does it? A. Well, we aimed to, yes, according to the instructions of the court, we aimed to. I was not here myself. I was excluded from the court room on that hearing. . . . A. My opinion, as I stated before, is that I don't think that the property at the extreme north end of this improvement is benefited. I do not believe that they are especially benefited. Q. How about the lots on Fifth avenue north of Madison street; there is no change

in the grade on these lots, is there? A. No, sir. Q. There the value of property is determined almost exclusively on its access to the shopping and retail business district immediately to the west and to the north; isn't that so? A. Yes, sir. . . . Q. In your opinion did not all the benefits cease; I mean all the benefits for this improvement cease at the place where you terminated your previous roll? A. Well, that is my opinion. They might not cease but I thought they did. Q. You still think so, don't you? A. Yes, sir."

The other commissioner, Mr. Goodhue, said:

"A. I think, if your honor pleases, that the benefits should be confined to the abutting property on the southern end of the district. . . . I don't believe as a commissioner that such a congestion exists at present and if it did, Fifth avenue with its grade much heavier than Fourth and other streets to the west, would not be used except on cases of extreme necessity for the reason that any teamster hauling a load will probably seek, even if he has to go around a little further, seek the better grade where it is materially better. If it had been intended to make Fifth avenue an important north and south thoroughfare, I think it would have to have been included with a widening to make it susceptible of heavy traffic. . . . Well, I believe that the grade even after the improvement is perfected will be still so much heavier than the parallel streets that it will not be used except in cases of necessity and that would mean a considerable growth of the city beyond its present size."

Counsel for respondent insists that some of this testimony was taken without special reference to the case of the appellants, but it nevertheless goes to show that the judgment of the commissioners sustains the first, rather than the second, roll. It has been held that § 22, Laws of 1905, page 84, did not make a commissioner of the superior judge, or permit a substitution of his judgment upon questions of fact, but that his power was limited to the appointment of the commissioners and a judicial review of the assessment roll returned by them. *Seattle v. Seattle & Montana R. Co.,* 50 Wash. 132, 96 Pac. 958. This holding was made under

an act which provided that the superior judge should examine the locality and otherwise act as a commissioner. This power was eliminated in the later statutes so as to make them harmonize with this ruling.

Considering, then, the record as we have it before us, we think it has been clearly shown, and for sufficient reasons as disclosed by the commissioners when called as witnesses, that the reassessment does not voice either their better or their true judgment, but that it was made to meet the desire, if not the command, of the court. This case is not unlike *In re Everett*, 61 Wash. 493, 112 Pac. 658, where the assessment was directed by the court. After copious quotation from the record we there said:

"Assessment according to benefits is largely a matter of opinion, and while we have often refused to disturb assessments where there was a conflict in the testimony as to the character and extent of the benefits, and have held the assessment roll as handed in by the commissioners and confirmed by the court was conclusive in the absence of fraud or apparent mistake, we have likewise held it will not be so regarded when it appears to have been arbitrarily made, such an assessment being a manifest abuse of the discretion vested in the commissioners. *In re Westlake Avenue*, 40 Wash. 144, 82 Pac. 279."

While we there referred to the remarks of the trial judge as indicating a lack of judicial discretion, the testimony of the commissioners, taken as a whole, convinces us that in this case there was no room for the exercise of judicial discretion. We are reminded that we said, in *In re Pine Street, supra*, and in *In re Seattle*, 50 Wash. 402, 97 Pac. 444, that a special assessment will not be disturbed as unequal or unjust where it rests upon opinion and the evidence is conflicting. We reaffirm the doctrine of those cases, but this case is not like unto them. It is not the equalness or justness of the assessment that is here involved, but the right to assess at all. And while all of these matters rest largely in opinion, and if there be a conflict of opinion appellate courts

will not intervene to substitute their own judgment, yet
after all the property owner is entitled to the judgment "of
those whom the law has.charged with the duty of establish-
ing the district and apportioning the cost," (*In re Seattle,
supra*) without judicial interference when that judgment is
undivided.

In this case, there is no conflict of opinion. It is certain
and, being ascertained, must be held to be controlling, not
only upon the superior court but this court as well. Other
suggestions are made by appellants which might be sufficient
to warrant a reversal of this case; but the determination
of them will be reserved by the court until such time as it is
necessary to decide them.

We are asked to intervene on behalf of the Sisters of Char-
ity. The first proposition urged is that chapter 153, Laws
1907, p. 316 (Rem. & Bal. Code, § 7768 *et seq.*), as amended
by Laws 1909, chap. 211, p. 724, provides in §§ 19 and 20
(Rem. & Bal. Code, §§ 7786, 7787), that the council may de-
termine whether all or, if not all, what portion of the sums
necessary to pay compensation and damages shall be raised
by assessment on the property specially benefited, and that
the later section 23, Laws 1909, chapter 211, p. 724 (Rem.
& Bal. Code, § 7790), provides that the commissioners shall
determine by a comparison of the public and private benefits
to be derived from the proposed improvement what propor-
tion of the cost shall be borne by the city and what propor-
tion shall be borne by the property specially benefited. It is
said that it is of the essence of the whole statute to provide
who shall apportion and assess the burden of expense; that
clearly the question cannot be determined by both tribunals;
The question put by appellant is not without its vexations,
but we think no violence is done to legal principles in hold-
ing that it is within the power of the council to make the ap-
portionment; but that, if it does not do so, that duty falls
upon the commissioners; in other words, that the right of
the commissioners to act at all in this behalf depends upon

the inaction of the council. In any event the roll comes into the superior court for confirmation, and being passed upon judicially, we are not willing to hold that there has been any violation of legal rights or a denial of due process of law.

But it is said that the evidence shows that there was in fact a benefit to the general public, so that there was no discretion left, either in the commissioners or the court, to do anything other than to apportion the cost. The commissioners say that there was no benefit, and then admit, upon more searching examination, that there is or may be a benefit to the general public. No questions come to this or any other court that involve such entanglements and complications as do these assessment cases. They cannot be resolved by reference to equation or theorem. As one of the commissioners said in this case, "the damages or benefits cannot be figured out;" "it is a matter of judgment." *In re Pine Street, supra.* "Justice in its abstract sense is impossible," said the trial judge, and we admit that it can hardly be approximated. All we can hope for then is that, in confirming these rolls, no greater injustice is done to one than to another. But it does not follow that the law is not satisfied. A benefit in a general way accrues to a municipality in virtue of every improvement. But the improvement may not be of such special character as to invoke the equitable power of the court in distributing its cost.

Section 7790, Rem. & Bal. Code:

"It shall be the duty of such commissioners to examine the locality where the improvement is proposed to be made and the property which will be especially benefited thereby, and to estimate what proportion, if any, of the total cost of such improvement will be of benefit to the public, and what proportion thereof will be a benefit to the property to be benefited, and apportion the same between the city and such property, so that each shall bear its relative equitable proportion. . . ."

seems to imply that the benefit referred to is a special

benefit and not a general one. It would seem further that, if this were not so, the statute under which assessment districts are formed, and which implies that the property within the district shall meet the cost of the improvement, served no purpose; for it would have been enough to say that the abutting property, in whole or in part, should sustain the charge. In *In re Pine Street, supra,* one of the contentions was that a "just proportion of the cost was not assessed against the general fund, such improvement being largely for the benefit of the public generally." While the point was only suggested in the briefs, the court held that the whole improvement could have been made at the expense of the property specially benefited. The court said:

"It is true that only a small part of the total cost of the improvement was finally assessed against the general fund, but, so far as the record shows, there was no obligation to assess the general fund at all. The whole improvement, notwithstanding, might have been made at the expense of the property specially benefited, without reference to the general benefits."

We see in this case, not so much the possible deprivation of a right, as a want of a remedy. If the case were sent back, the return of the commissioners would no doubt bring the same result; for it is not within our power to substitute our judgment for, or coerce, the opinion of the commissioners, unless it has been arbitrarily exercised. They have found that there is no such benefit to the public as will warrant a tax upon the general fund. Their findings and return of the fact conclude us.

The appeal of the Metropolitan Building Association is sustained, and this case will be remanded with directions to dismiss it from this proceeding, with its property exonerated from any charge for the improvement of Fifth avenue south of the first lot south of Seneca street. The judgment of the lower court as to the property of the Sisters of Charity of the House of Providence is affirmed.

Dunbar, C. J., Crow, Ellis, and Morris, JJ., concur.