[No. 11734.    Department One.    May 28, 1914.]

*In re* NINTH AVENUE *etc.*, SEATTLE.[1]

THE CITY OF SEATTLE, *Respondent*, v. A. D. DURHAM *et al.*,
*Appellants.*[1]

MUNICIPAL CORPORATIONS — IMPROVEMENTS — ASSESSMENTS — DE-
FENSES. Upon objection to the assessment of property, it is imma-
terial that it has been assessed in large amounts for other improve-
ments.

SAME—ASSESSMENTS—PROCEEDINGS—OBJECTIONS—TIME FOR MAK-
ING. An objection that an improvement was not initiated by a peti-
tion or with the consent of property owners comes too late when
first made on objecting to the assessment roll to pay the damages
awarded in the condemnation proceedings.

SAME—ASSESSMENTS—APPORTIONMENT TO GENERAL FUND—APPEAL
—REVIEW. An apportionment by eminent domain commissioners of
12.5 per cent of the cost of condemnation for an arterial street to the
general fund, cannot be disturbed on appeal, where there was no
evidence that a different sum would have been more equitable, the
matter was largely one of opinion, and there was no agreement be-
tween the testimony of the witnesses.

Appeal from a judgment of the superior court for King
county, Gilliam, J., entered August 16, 1913, confirming an
assessment roll, on appeal from the eminent domain commis-
sioners. Affirmed.

*Chas. M. Fouts*, for appellants.

*James E. Bradford* and *William B. Allison*, for respond-
ent.

ELLIS, J.—This is an appeal from a judgment confirming
an assessment roll, made by eminent domain commissioners to
pay the damages awarded in a condemnation proceeding for
regrading Ninth avenue and Ninth avenue north from its in-
tersection with Westlake avenue near Denny Way, north-
ward to its second intersection with Westlake avenue near

[1]Reported in 141 Pac. 61.

Valley street.   At the south end of this improvement, the re-grade for which the condemnation was had makes a deep cut which diminishes to nothing at the Mercer street intersection, near the middle of the whole length of street involved.   From there on to the north end, the grade provides for a fill, at first slight, but increasing to a very considerable depth as the north end of the improvement is approached.   The depth of the larger part of this fill is not fixed by the evidence with any exactness, for the reason that it was largely made in water, the street at the north end traversing a pond or lagoon extending from Lake Union.   This, however, is not material, since the assessment involved is not to pay for the physical work of making the grade, but for the damages occasioned by the change of grade.   The properties abutting upon the fill were assessed, on an average, about one-third of the assessments against the properties south of the Mercer street intersection.

Aside from the mere conclusion that the commissioners acted upon a fundamentally wrong basis in levying the assessment, the roll is assailed upon the following specific grounds: (1) that most of the property assessed for this improvement has been assessed for similar improvements of other streets; (2) that a majority of the property owners protested against the improvement; (3) that too small an amount was assessed to the general fund; (4) that the district did not include all of the property benefited; (5) that protestants' properties were assessed beyond the benefits and more than their proportion of the cost.

The first objection may be summarily dismissed.   On the appeal in *In re Third, Fourth, & Fifth Avenues*, 55 Wash. 519, 104 Pac. 799, we said:

"It was immaterial that the lot in question had been assessed in a large amount for other improvements.   The only question to be determined was, could it be, and was it properly, assessable as receiving a special benefit from this improvement."

If the property here involved was assessed for other improvements, we must assume that it received a *quid pro quo* in benefits from such improvements.

The fact that this improvement was not initiated by a petition, or with the consent of the property owners, cannot be raised in this proceeding. The question of necessity was foreclosed in the condemnation suit. The objection, if it was ever available, comes too late in a proceeding to pay the damages awarded in that suit.

The special benefit to the city as a whole resulting from this regrade lies in the fact that this part of Ninth avenue north parallels Westlake avenue, the main arterial highway of this section of the city, at a distance of one block. The change in Ninth avenue north reduces its grade throughout this part from a maximum of 7.6 per cent to a practically uniform grade of 1.5 per cent, thus offering relief to the congested traffic on Westlake. On this account, the commissioners assessed 12.5 per cent of the cost to the general fund. There was no evidence from which the court could have found that a different sum or percentage would have been more equitable. While several witnesses asserted that this sum was too small, no witness suggested any specific amount as proper, or suggested any basis for the fixing of any different percentage. In this respect, the case is in marked contrast to that presented in our recent decision. *In re Boyer Avenue, ante* p. 663, 141 Pac. 58. The court can only modify the roll upon data furnished by convincing evidence. *In re Elliott Avenue*, 74 Wash. 184, 133 Pac. 8. In this case, such evidence was wholly wanting.

There is nothing tangible in the evidence attacking the limits of the district as fixed by the commissioners. It amounts to nothing more than a general criticism that other property to the north, not abutting upon the improvement, should have been included in the district. The line where special benefits cease and general benefits begin is always essentially a matter of opinion. Exactness in its determina-

tion can seldom be attained. Nothing short of evidence demonstrating arbitrary action on their part would warrant the court in disturbing the limits as fixed by the commissioners appointed for that purpose. *In re Pine Street*, 57 Wash. 178, 106 Pac. 755; *In re Boyer Avenue, supra.*

On the question of relative benefits and distribution of cost, the disagreement of the witnesses for the protestants among themselves was even more marked than their disagreement with the opinion of the commissioners as expressed in the roll. They agreed in but one thing. They were unanimous in the belief that the property north of Mercer street where the fill begins was benefited at least as much as that south of Mercer where the cut was made; but it is obvious that they all overlooked the fact that the cut, for which alone the condemnation was had, and to pay the damages for which alone the assessment was made, was of comparatively little benefit to the property to which the fill alone would furnish full access to Westlake avenue by a street eighty feet wide, on a level grade. They overlooked the fact that, with this perfect access to Westlake, this property was not vitally concerned in, nor greatly benefited by, a minimized grade on Ninth avenue further south. They failed to note the fact that it was the actual fill which mainly benefited the property north of Mercer street, not the change of grade further south, and that it was to pay the damages for the change of grade further south, not for the physical fill, that the assessment here in question was made. In fact, the map in evidence indicates that, from Mercer street north to the end of the improvement, the grade to which the fill was made was an original grade. These witnesses confounded the benefits from the physical fill, not concerned in this assessment, with the benefits from the change of grade further south to pay the damages for which, alone, the assessment was made. Had the assessment been made upon their theory, it would have been framed upon a fundamentally wrong basis and wholly indefensible. The trial court clearly perceived this. In con-

firming the roll, after pointing out the fact that the property south of Mercer street was, by the change of grade, enhanced in value by being rendered suitable for business property, whereas before it was indifferent residence property, he said:

"It does not have that effect on the property north of Mercer street, because that never was residence property; it always has been, and always will be business property, whenever there is any business to require it, and this grade does not make that change from residence property to business property. By filling in the streets there without any change in the grade they would have a very convenient outlet at practically no grade—no grade of any consequence, into Westlake avenue, which is the main thoroughfare running through that part of the city. To make this other property south of Mercer street, there must have been this deep cut, otherwise it would have remained what it was before, second or third class residence property. From the standpoint of real estate purchases, the business property always commands a higher price than residence property, and I am of the opinion, from my own ideas about the case, that the commission have worked out a fairly equitable roll; that is the view I take of it. Of course, this physical act of grading and filling, that does not affect this case. The property north of Mercer street has to be filled before it can be of any value, that is true, but that does not depend upon this proceeding at all. With that view of the situation, I will have to confirm the assessment roll as returned by this commission."

It has been often remarked that the question of benefits, like every other element entering into the making of value, is a matter largely resting in opinion. The opinion of the commissioners is expressed in the roll. The basis of that opinion was tersely stated by one of the commissioners as found in the fact that the protestants' property was, by the regrade, brought into easy access to two great arterial highways, Westlake avenue and Valley street. While the protestants and their witnesses did not agree with him, they were farther from an agreement among themselves as to

what, if any, benefit this property received.    They offered no coherent theory for a change of the roll.

As decisive of this case, we revert again to a principle so often expressed in one form or another as to be almost trite.

"The action of the commissioners in fixing the limits of the district, in determining what property is in fact, benefited, in apportioning the cost of the improvement according to benefits, and, where that matter is referred to them, in determining what part, if any, of that cost should be borne by the city, will not be disturbed by the court on mere differences of opinion, nor in the absence of a clear showing that the action of the commissioners was fraudulent, arbitrary, or based upon a fundamentally wrong theory." *In re Boyer Avenue, supra.*

Affirmed.

CROW, C. J., MAIN, GOSE, and CHADWICK, JJ., concur.