[No. 12395.   Department Two.   May 18, 1915.]

*In Re* SHILSHOLE AVENUE.[1]

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ASSESSMENTS—
FINDINGS OF COURT—REVIEW.   The findings of the superior court made upon attacking the assessment roll for a local improvement in eminent domain proceedings by cities, in the absence of exceptions, are conclusive on appeal, in view of Rem. & Bal. Code, § 7795, providing that the hearing shall be conducted as in other cases at law tried by the court, and findings made thereon and judgment entered accordingly.

SAME—PUBLIC IMPROVEMENTS—ASSESSMENT OR GENERAL TAXATION.
The establishment of a county canal flooding certain city streets and abutting lots, as a general public improvement, does not prevent the assessment of the same property for the purpose of elevating the grade of the streets above the water level, as a local improvement, on the theory that the raising of the grades was necessitated by a general public improvement as distinguished from a local improvement and that its expense was one which should be borne by general taxation.

SAME—ASSESSMENTS—SPECIAL BENEFITS.   An assessment for a local improvement by elevating the grade of streets, should be set aside as made upon a fundamentally wrong basis, where the lower court found that a potential flooding of the district for a county canal required elevation of the streets but slightly above water level which would be a benefit to the property, but that it would not be a benefit to raise them, as proposed in the present proceedings, to a height of nine feet above the water level; and after awarding damages for such excessive elevation, proceeded to assess the property for the amount of such damages, in addition to an assessment for the slight elevation necessary to make them dry and usable; since there was no relation between the benefits to the benefited

[1]Reported in 148 Pac. 781.

property and the damages to the damaged property, and the thing which conferred the benefit did not inflict the damage; and it is immaterial that both were parts of one improvement.

SAME. Under Const., art. 7, § 9, which provides that "the legislature may vest the corporate authorities of cities, towns, and villages with power to make local improvements by special assessment, or by special taxation of property benefited," and under Rem. & Bal. Code, § 7790, which provides that "no property shall be assessed a greater amount than it will be actually benefited," there can be no special assessment to pay for a thing which has conferred no special benefit on the property assessed, and hence general benefits cannot be made the basis of a levy.

SAME—ASSESSMENTS—REVIEW—NECESSITY OF APPEAL. The final judgment of the lower court in passing upon the assessment roll in condemnation proceedings being conclusive upon all who are content to accept it, the reversal of such judgment on appeal and cancellation of assessments therein decreed affects only the property of the parties to the appeal.

Cross-appeals from a judgment of the superior court for King county, French, J., entered September 29, 1914, authorizing the levy of an assessment upon property specially benefited by a public improvement. Reversed.

*Donworth & Todd, Higgins & Hughes* (*Hyman Zettler*, of counsel), for appellants Donworth *et al.*

*Ballinger & Hutson*, for appellants Stimson *et al.*

*James E. Bradford* and *Ralph S. Pierce*, for respondent and cross-appellant City of Seattle.

ELLIS, J.—This case involves an assessment roll, made by the eminent domain commissioners of the city of Seattle, to pay the damages resulting from the raising of the grade of Shilshole avenue and the incidental change of the grades of other streets and avenues and approaches thereto.

To avoid confusion, it must be borne in mind throughout that it is not the physical fill nor any benefits that might accrue from the actual construction of the regrade, but only the assessment to pay damages awarded in the condemnation proceeding for the change of grade, which is here involved.

In 1890 and 1894, Congress made certain appropriations in aid of the project known as the Lake Washington Canal. These were conditioned that the local authorities should secure a right of way for, and a release of all liability for damages occasioned in the construction of, the proposed canal. Accordingly the state legislature passed an act, Laws 1895, p. 3, authorizing counties to condemn lands, rights and interests, whether private or already devoted to public use, in aid of any public work undertaken by the government of the United States or of this state. The act declared all damages accruing and amounts payable by reason of the exercise of the power conferred to be for general county purposes, and payable by a general county tax to be levied and collected as other taxes for general county purposes.

Through the exercise of the power conferred by that law, King county, in the year, 1898, by a proceeding in condemnation in aid of the construction of the Lake Washington Canal, acquired the right to flood, to an elevation of seven feet above city datum, certain property and streets located, for the most part, in the then city of Ballard. City datum is the level of mean high tide. In that proceeding, the property owners received compensation for the flooding of their property, and the city of Ballard for the flooding of the streets. The amount allowed to the city was $7,500, which the city accepted and devoted to municipal uses. Subsequently, and some years prior to the proceedings here involved, the city of Ballard was annexed to the city of Seattle, which city succeeded to all of the property rights and obligations of the city of Ballard.

The Lake Washington Canal follows Salmon Bay, a narrow inlet lying between the district of Ballard and Seattle proper and extending from Puget Sound almost to Lake Union. Shilshole avenue, the main arterial highway of this district, takes a general course parallel to the north shore of Salmon Bay and lies only two or three feet above the water level. Between Shilshole avenue and the channel of Salmon Bay,

lies a large area of tide lands.  To the north of Shilshole avenue, the land and the streets slope at a gently rising grade for a distance of two or three blocks, where the ground rises abruptly.  It is this low lying area between Salmon Bay and the foot of the hill to the north which is to be flooded by the raising of the waters of Salmon Bay through the proposed construction of a lock at its mouth.  This potentially flooded area comprises the territory sought to be assessed in the proceeding before us.  It is practically coincident with the limits of the assessment district in which it is proposed to raise the street grades.  It is conceded that, were it not for the construction of the canal, there would be no need for any change of street grades.

As we have seen, the construction of the canal, according to the old county condemnation, will raise the water of Salmon Bay to seven feet above city datum.  In order to have dry streets it is, of course, necessary that they be filled to a height somewhat more than seven feet above datum.  Instead of raising these streets to eight or nine feet above datum, which would bring them above the canal and put them in the same condition relative to the water as they now are, the city, for reasons which do not appear in the record, has provided in the ordinance initiating this improvement for establishing the new grades at an average of sixteen to eighteen feet above datum.  This will bring the street level nine or ten feet above the water in the completed canal.

The undisputed evidence shows that the only special benefit resulting to the property in this district consists in bringing the streets slightly above the water level of the canal so as to make them dry and usable, that is to an elevation slightly higher than seven feet above datum.

Pursuant to the initiatory ordinance, the city brought a condemnation suit to acquire the right to change the grades from the existing elevation to the above mentioned elevation of sixteen to eighteen feet above datum.  The damages awarded, together with interest and costs, approximate

$220,000. It is to pay these damages that the roll here in question was made. In the condemnation proceeding, no damages were awarded for that portion of the change of grade necessary to bring the streets from the existing elevation to where they would be dry and slightly above the canal level, that is, slightly higher than seven feet above datum. The only damages allowed were such as resulted from the raising of the grade from seven feet above datum to the proposed final level of sixteen or eighteen feet above datum. This was on the theory then held by counsel for the city, and apparently adopted by the court, that no damages could be paid for the raise of grade up to the canal level so as to bring the streets out of the way of the water, because it was claimed damages for that raise had already been paid in the old King county condemnation suit. We are not here vitally concerned with the court's reason for limiting the damages recoverable to those occasioned by the raising of the grade from the new water level of seven feet above datum to the new proposed street level of sixteen feet above datum, the vital thing being that, as a matter of fact, the damages were so limited.

The reference of the matter to the eminent domain commission to assess the property benefited by the change of grade to pay the damages was in conformity to the initial ordinance, which provided that the entire cost "shall be paid by special assessment upon the property specially benefited," and that "no part thereof shall be paid from the general fund of the city of Seattle." The eminent domain commissioners found, and so testified, that the sole special benefit to the property included in the assessment district consisted in bringing the streets up to the canal level or slightly above. In making the roll, however, they assessed this benefit to meet the awards rendered for the additional raising of grade up to plus sixteen, in spite of the fact that they also found, and so testified, that the property was not benefited by this additional raise in any manner whatever. They all further

testified that the roll included all the property specially benefited within the district, and assessed all of that property to the maximum in which it was specially benefited. The roll resulted in assessments amounting to something over $149,-000, leaving a deficit of $70,949.54, for which the commissioners found no assessment sustainable by special benefits could be made. The court, after finding most of the foregoing facts, made certain findings which we quote verbatim:

"(3) That at the present time Shilshole avenue and the water front streets lie at an average elevation of from three to five feet above city datum, the other streets in the districts sloping back at a gentle grade to the north; that the proposed improvement provides for a change of grade up to an average elevation of sixteen feet above city datum on the water front streets and running back at an easy grade to the north; that King county heretofore condemned the right to flood the streets and property up to an elevation of plus seven above city datum, so that by reason of the proposed improvement the streets will be brought approximately nine feet above the surface of the canal; that no special benefits are conferred on the property by reason of any increase of grade above that necessary to bring the surface of the streets slightly above the level of the water so as to put them in a dry and usable condition; that any increase of grade above such water level grade is not a special benefit to the abutting property; that all the special benefits conferred by this improvement are found solely in the fact that the surface of the streets are brought above the level of the water and made dry and usable instead of being left at their existing physical elevation and covered with water, and all of said special benefits would be equally conferred by any change of grade which would bring the streets above the flood line so as to change the same from a flooded condition to a dry and usable condition; that all of the property specially benefited is included in the district as established by the eminent domain commission."

This finding was not excepted to by the city. In any event it is amply supported by the evidence. One of the commissioners testified:

"That it would make no difference in the benefits found whether the commission considered the streets at the existing elevation or just flush with the canal line, whether that be considered as being either seven or nine feet, because the streets would be equally unusable in any event; and therefore since the only benefit consists in bringing the streets up above the level of the water, so that the surface would be dry and usable, every possible benefit conferred by this improvement would have been conferred by simply bringing the streets a few inches or a half a foot above the canal line, which could have been done without the payment of the damages which we are here called upon to assess. The whole commission, being convinced of that fact, had frequent conferences with the city engineer's office to see why the grades were raised many feet beyond that point, but were unable to get any satisfactory reasons."

The other two commissioners testified to the same effect. There was no evidence to the contrary. The court also found:

"(6) That the damages awarded in this condemnation proceeding were occasioned by that portion of the change of grade necessary to bring the surface of the streets from a point slightly above the level of the water, the dry and usable condition, to the present grades as established herein, and said damages were allowed only for such increase of grade; that no damages were awarded for that portion of the change of grade from the existing physical elevations of the streets to a point slightly above the water level sufficient to bring the surface of the streets up above and out of the way of the water."

The city took no exception to this finding, and it also was amply supported by the evidence. The attorney for the city in the condemnation proceeding, and also in this proceeding, testified:

"That the city in the condemnation proceeding took the position, which was sustained, that no damages had to be paid for the raise of grade up to and above the canal level so as to bring the streets out of the way of the water because that damage had already been paid in the old King county

condemnation suit; that therefore the only damages paid in this condemnation suit were for the raise of grade of the streets from that point up to the elevations established by said proceeding."

The court further found:

"(7) That the board of eminent domain commission in preparing the assessment roll herein have proceeded upon the theory that the city of Seattle had already acquired and had the right to raise the streets within this district to a plus nine city datum; that the court finds no special benefit would be conferred upon the property within the so called flood area by this proceeding if such right existed, because the actual flood line, as held by this court, is only seven feet above city datum, and that on the roll as prepared and now under consideration by the court the property within the so called flood area is assessed approximately $150,000; that the commission found the special benefits to consist in the fact that the streets were changed from a flooded condition to a dry and usable condition, but that said commission proceeded upon the theory that said streets would be flooded to a depth of nine feet above city datum instead of seven feet above city datum as held by this court."

This finding, though not excepted to by the city, was excepted to by the contesting property owners. In any event, as we view the case, it is wholly immaterial in view of the prior findings of the court that no special benefits resulted from any increase of grade above that necessary to bring the surface of the streets slightly above the level of the water and in a dry and usable condition, and the further finding that the damages awarded in the condemnation proceedings were occasioned solely by that portion of the change of grade necessary to bring the surface of the street from a point slightly above the level of the water or a dry and usable condition, to the present established grade.

The court concluded as a matter of law:

"(1) That the city of Ballard was under no obligation, by reason of its receiving damages for the flooding of its streets, to readjust the same or to repair the damage so done; that the city of Seattle, as the successor of the city

of Ballard, obtained and assumed all of the rights and obligations of said city of Ballard, and that no duty is imposed upon said city of Seattle by reason of its receiving said damages for the flooding of the streets, to regrade or change the grade of said streets or to adjust them above the water level, or to take any steps to protect said streets from being and remaining in a flooded condition; that the city of Seattle, by and through the board of eminent domain commission, has authority and power to levy special assessments in this proceeding, which said assessments shall be commensurate with and shall not exceed the special benefits sustained by the property by reason of the change of the streets from a submerged condition to a dry and usable condition at the elevation herein established.

"(2) That the only right acquired in the streets by the judgment entered in the case of King County v. James R. Allan *et al.*, being cause No. ———, was to flood said streets to an elevation of plus seven above city datum; that no new grade of the streets was established by reason of said condemnation judgment, and that no rights were acquired thereby to change the existing grade of the streets either up to a water level grade or to any other grade whatsoever; that the right acquired in this cause was to change the grade from existing elevations to the elevations established herein, and that benefits must be computed with reference to the streets as existing at their present elevation covered with, or subject to be covered with water up to an elevation of plus seven as contrasted with the grade of the streets as established by this proceeding, and that the property should be assessed upon that basis."

The court thereupon entered its order sustaining the right of the city to levy the assessment, but ordered that the roll be referred to the commissioners with instructions to make certain modifications in the assessments on such property as was considered by the commissioners as being flooded, on the theory that the waters of the canal would be raised to plus nine, but which would not be flooded if the waters were raised only to plus seven as held by the court. The contesting property owners have appealed, and the city has taken a cross-appeal.

The appellants assigned as error the making of the court's conclusions of law and the entering of any judgment authorizing an assessment against their properties, on the ground that neither was sustained by the court's findings. The city, cross-appellant, assigns as error the making of the several findings of fact, and the entry of the order re- ferring the roll for modification.

If the findings of the court are to be accorded the same force that findings are given in other proceedings, whether legal or equitable, tried by the court without a jury, it is obvious that the cross-appeal can only be considered as rais- ing the question whether the findings support the order of reference for modification. The governing statute, Rem. & Bal. Code, § 7795 (P. C. 171 § 85), provides:

"On the hearing, the report of such commissioners shall be competent evidence and either party may introduce such other evidence as may tend to establish the right of the mat- ter. The hearing shall be conducted as in other cases at law, tried by the court without a jury, and if it shall appear that the property of the objector is assessed more or less than it will be benefited, or more or less than its proportionate share of the costs of the improvement, the court shall so find, and also find, the amount in which said property ought to be assessed, and the judgment shall be entered accordingly."

The provision that the court shall take such evidence as "may tend to establish the right of the matter" would seem to indicate that the hearing is essentially an equitable pro- ceeding, but the next provision that the hearing shall be conducted as in "other cases at law, tried by the court with- out a jury," seems to construe the proceedings as one at law. In any event, this statute expressly authorizes the court to make findings, and since the proceedings are, by express statutory direction, to be conducted as other cases tried by the court without a jury, the findings, when not excepted to, are binding on the parties, and hence cannot be disturbed by this court on appeal.

As has been repeatedly pointed out, this court in such
cases is not a court of first instance, but purely a court of
review. *In re West Wheeler Street, ante* p. 146, 147 Pac.
873; *Strelau v. Seattle, ante* p. 255, 147 Pac. 1144; *In re
Westlake Avenue,* 40 Wash. 144, 82 Pac. 279; *Seattle v. Syl-
vester-Cowen Inv. Co.,* 55 Wash. 659, 104 Pac. 1121. We
have repeatedly held that in actions, whether equitable or
legal, when the trial court makes complete findings they are
binding on the parties in the absence of exceptions, and when
not excepted to will be taken as true. *Hector v. Hector,* 51
Wash. 434, 99 Pac. 13; *Hoeschler v. Bascom,* 44 Wash. 673,
87 Pac. 943; *Washington Trust Co. v. Local & Long Dis-
tance Tel. Co.,* 73 Wash. 627, 132 Pac. 398; *Harbican v.
Chamberlin,* 82 Wash. 556, 144 Pac. 717; *Corbitt v. Civil
Service Commission of Seattle,* 33 Wash. 190, 73 Pac.
1116; *Shaw v. Benesh,* 37 Wash. 457, 79 Pac. 1007; *Cars-
tens v. Alaska Steamship Co.,* 39 Wash. 229, 81 Pac. 691;
*Metcalf v. Storey,* 80 Wash. 119, 141 Pac. 315.

The sole question presented therefore, both by the appel-
lants' and cross-appellant's assignments of error, is whether
the conclusions of law and judgment are supported by the
findings.

I.   The main contention of the appellant property owners
is that the city having received compensation for the flooding
of these streets in the old county condemnation suit, cannot
assess the resulting damages for raising the grade of the
streets against the abutting property. The city contends
that, in contemplation of law, the property owners received
pay in the old county condemnation for every damage to their
property caused by the actual flooding of the property itself
or the adjacent streets, and that the city only received com-
pensation for the injury to its own interest, that is, the pub-
lic easement in the streets; that both the property and the
streets, immediately upon that condemnation, became po-
tentially flooded to the depth of seven feet above datum, but
that the grades, either actual or official, of the streets were

not changed either physically or potentially. There is much force in the view that the potential condition which was then created, though surely necessitating some kind of an improvement by a change of grade, did not alter the legal relation either of the city or the abutting property to the streets or to each other in their relation to any future improvement of the streets, since the property owners had already received pay for the damage to their street access. We shall not, however, decide this question, since the view we take of the case in other particulars renders its decision unnecessary.

II. It is next contended that the raising of the grades being necessitated by a general public improvement, namely the construction of the Lake Washington Canal, as distinguished from a local improvement, the damages for the change of grade should be considered a part of the expense of the general improvement and should be borne by general taxation. This contention is basically unsound. Had the flooding of the streets been made for a city purpose and at the instance of the city, a different question would be presented. True, the streets are to be flooded for a public purpose, but it is a county purpose, not a city purpose. The resultant situation must, therefore, be treated exactly the same as if a public service corporation, a boom company, a canal company or a power company, had condemned both the easement of the city and the right of access of the owners of abutting property for the right to flood the streets for a public use. The authorities cited by the appellants in this connection are cases in which the city itself had damaged the streets and sought to assess the cost of restoration against the property owners. *City of Burlington v. Palmer,* 67 Iowa 681, 25 N. W. 877; *City of Philadelphia v. Henry,* 161 Pa. St. 38, 28 Atl. 946. The distinction from the case here seems too plain to require further comment.

III. It seems to us, however, that a third ground advanced by the appellant property owners as a reason why

their property should bear no part of the damages awarded for the change of grade here involved is clearly sound.

The findings of the trial court, as we have seen, must be taken as correct, since the city took no exceptions to them. They show conclusively that the property of the appellant owners cannot be assessed in this proceeding, and hence do not support, but rather negative, the court's conclusions of law. The findings conclusively show that there was no necessity for a condemnation to raise the grade to the height sufficient to confer every benefit upon the property of the appellants which can be conferred by a change of grade. This results from the finding "that the damages awarded in the condemnation proceeding were occasioned by that portion of the change of grade from a point slightly above the level of the water . . . to the present grades as established herein." That is to say, from about nine feet above city datum to about sixteen feet above city datum. See finding six above quoted.

The court also found that the added height above the level necessary to raise the streets slightly above water conferred no benefits upon the submerged property. See finding three above quoted.

The necessary result of these findings is that the flooded property is assessed by this roll to pay damages awarded for that part of the raise of grade which did not benefit it, and which were awarded for that part only. It is obvious that if these findings are correct, the two sections of this contemplated elevation of grade, namely (1) that part rising from datum to about nine feet above datum (which would produce a dry street just above the flood line), and (2) that part rising from this nine foot level above datum to about sixteen feet above datum (which produces a street about nine feet above the flood line) have no correlative effect upon the two classes of property affected by the improvement, namely (1) the property *damaged* and to pay damages to which the assessment is levied, and (2) the property. *benefited* and as-

sessed to pay those damages. The first part of this eleva-
tion up to nine feet above datum alone confers the benefit
on the *benefited* property. The second part, from nine up
to sixteen feet above datum, alone inflicted the damages on
the *damaged* property. The vital point is this: *The thing
which conferred the benefit on the one class of property did
not inflict the damages on the other class.* It is clear, there-
fore, that to assess the property benefited to pay these dam-
ages is to assess it for something that had no relation to the
benefits. The damages to the damaged property and the
benefits to the benefited property have no more relation to
each other than if they resulted from wholly different im-
provements.

The fact that the thing which damaged one class of prop-
erty and the thing which benefited the other class are parts
of the same improvement does not alter the case. A close
analogy is presented in our decision in *In re Ninth Avenue
etc., Seattle,* 79 Wash. 674, 141 Pac. 61. In that case part of
the improvement was a change of grade necessitating a cut,
the other part was the establishment of an original grade
necessitating a fill. The condemnation was to pay damages
to the property abutting on the cut caused by the lowering
of the grade there. It was urged that the property abutting
upon the fill, and which the fill alone put into access with
Westlake avenue, the main arterial highway of the district,
should be assessed the same as the property further south
which acquired access to Westlake avenue through the cut.
It was evident that the damages, for which alone the assess-
ment was made, were caused by a thing, namely the cut,
which benefited the property south of the fill very much, but
benefited the property abutting the fill very little. In de-
ciding that the assessment was properly made by assessing
the larger amount to the property to the south and the
smaller amount to the property abutting the fill, we said:

"On the question of relative benefits and distribution of
cost, the disagreement of the witnesses for the protestants

among themselves was even more marked than their disagreement with the opinion of the commissioners as expressed in the roll. They agreed in but one thing. They were unanimous in the belief that the property north of Mercer street where the fill begins was benefited at least as much as that south of Mercer where the cut was made; but it is obvious that they all overlooked the fact that the cut, for which alone the condemnation was had, and to pay the damages for which alone the assessment was made, was of comparatively little benefit to the property to which the fill alone would furnish full access to Westlake avenue by a street eighty feet wide, on a level grade. They overlooked the fact that, with this perfect access to Westlake, this property was not vitally concerned in, nor greatly benefited by, a minimized grade on Ninth avenue further south. They failed to note the fact that it was the actual fill which mainly benefited the property north of Mercer street, not the change of grade further south, and that it was to pay the damages for the change of grade further south, not for the physical fill, that the assessment here in question was made. In fact, the map in evidence indicates that, from Mercer street north to the end of the improvement, the grade to which the fill was made was an original grade. These witnesses confounded the benefits from the physical fill, not concerned in this assessment, with the benefits from the change of grade further south to pay the damages for which, alone, the assessment was made. Had the assessment been made upon their theory, it would have been framed upon a fundamentally wrong basis and wholly indefensible."

*Mutatis mutandis*, this language applies with equal force to the case here. This assessment, being made against the property of these appellants to pay damages for a thing which did not benefit that property, was founded upon a fundamentally wrong basis and is wholly indefensible.

The city having failed to except to the court's findings on the question of benefits, presumably because it offered no evidence to the contrary, is compelled to fall back upon the untenable position that the declaration of the council in the ordinance initiating the improvement, that the cost of the

condemnation should be paid "wholly by special assessment upon the property benefited" is, under the decision in *Spokane v. Curtiss*, 66 Wash. 555, 120 Pac. 70, final and conclusive that the property in the district was in fact benefited to the extent of the damages to pay which the assessment is intended.   In that case, however, we merely held that no part of the damages can be assessed against the city by the eminent domain commission when the ordinance declares that the whole cost shall be assessed against the property benefited. We did not hold that such a declaration of the council is conclusive that the property is benefited, but only that the city cannot be assessed.   As we said in the case of *In re Leary Avenue*, 77 Wash. 399, 138 Pac. 8, touching the *Curtiss* case:

"This, of course, would not authorize charging the specially benefited property beyond the benefits, but it would prevent the charging of any part of the cost against the city. Under such circumstances, the project might fail for inability to raise sufficient funds by the special assessment, because of lack of benefits, but that would not compel the city to contribute against its will."

It is the basic principle and the very life of the doctrine of special assessments that there can be no special assessment to pay for a thing which has conferred no special benefit upon the property assessed.   To assess property for a thing which did not benefit it would be *pro tanto* the taking of private property for a public use without compensation, hence unconstitutional.   Though the right to levy special assessments for local improvements is referable solely to the sovereign power of taxation, our state constitution, article 7, § 9, expressly limits its exercise to assessments of property benefited.   It provides:

"The legislature may vest the corporate authorities of cities, towns, and villages with power to make local improvements by special assessment, or by special taxation of property benefited.  .  .  ."

Rem. & Bal. Code, § 7790, provides, among other things, "that no property shall be assessed a greater amount than it will be actually benefited."

In *In re Fifth Avenue and Fifth Avenue South*, 66 Wash. 327, 330, 119 Pac. 852, we said:

"It will be obvious to any one who reads the special assessment statutes that it was the intent of the legislature to permit the assessment of only such property as was specially benefited (§ 7790), and that general benefits could not be made the basis of a levy. . . . it will be seen that it is the duty of the court to inquire whether the property is assessed more or less than it is specially benefited, and unless there is a special benefit the court has no jurisdiction to order its inclusion in the roll."

See, also, *Aumiller v. North Yakima*, 73 Wash. 96, 131 Pac. 470; *State ex rel. Murphy v. Wright*, 76 Wash. 383, 136 Pac. 482; Page & Jones, Taxation by Assessment, p. 199, § 118; p. 441, § 284; Dillon, Municipal Corporations (5th ed.), § 1440; *Haggart v. Alton*, 29 S. D. 509, 137 N. W. 372; *Sears v. Street Commissioners of Boston*, 173 Mass. 350, 53 N. E. 876; *Ferguson v. Borough of Stamford*, 60 Conn. 432, 22 Atl. 782; *Northwestern University v. Wilmette*, 230 Ill. 80, 82 N. E. 615; *Lipes v. Hand*, 104 Ind. 503, 1 N. E. 871, 4 N. E. 160; *Rogers v. St. Paul*, 22 Minn. 494; *Morewood Avenue, Chamber's Appeal*, 159 Pa. St. 20, 28 Atl. 123, 132.

The fact that the property of these appellants has, under the evidence and the findings of the trial court, demonstrably received no benefit whatever from that part of the change of grade, to pay the damages occasioned by which the assessment was made, compels the conclusion that the assessments against the property concerning which this appeal was taken must be cancelled. It does not appear that all of the property owners in the district have appealed, but this decision, of course, only affects the property of the parties who have appealed. As stated in *Seattle v. Sylvester-Cowen Inv. Co.*,

*supra*, "the final judgment of the lower court is conclusive upon all who are content to accept it."

See, also, *In re Westlake Avenue, Seattle, In re West Wheeler Street,* and *Strelau v. Seattle, supra.*

The judgment as to these appellants is reversed, and the case is remanded with direction to cancel the assessments against their property.

MOUNT, MAIN, CROW, and FULLERTON, JJ., concur.