[No. 11019.  Department One.  July 14, 1913.]

JOHN MARSHALL MAGGS et al., *Respondents*, v. THE CITY OF
SEATTLE et al., *Appellants*.[1]

DEDICATION—PAROL DEDICATION—EVIDENCE—SUFFICIENCY. A parol
dedication is not sufficiently established by evidence of alleged state-
ments made by the owner some twenty years before the trial, to the
effect that the strip "was an old county road," that he had "taken
twenty feet here for a street" or "laid out twenty feet for a drive-
way," and the plat showed it to be part of a lot with no expressed in-
tention to dedicate.

HIGHWAYS—PRESCRIPTION—EVIDENCE—SUFFICIENCY. A highway
by prescription is not established by use of a wagon road, convenience
way, or trail, confined to a few people, and used by sufferance of the
owners.

MUNICIPAL CORPORATIONS — STREETS — IMPROVEMENTS — REVIEW BY
COURTS. The method of improving streets by lawful structures be-
ing a political question, the courts cannot interfere to direct the
authorities as to the kinds of gutters and curbs to place at a certain
corner.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered October 29, 1912, in favor of
the plaintiffs, in an action for an injunction, after a trial
before the court.  Modified.

*James E. Bradford* and *William B. Allison*, for appellants.

*John E. Ryan* and *Grover E. Desmond*, for respondents.

GOSE, J.—The principal question presented by this appeal
is whether the north twenty feet of lot 5, block 7, supple-
mental plat of Union Lake addition to the city of Seattle, is
a public highway.  The city asserts that it is a part of a
public highway established (a) by the board of county com-
missioners in 1879, (b) by parol dedication, and (c) by
prescription.

The city makes little contention as to the first proposi-
tion, and it finds no substantial support in the record.

[1]Reported in 133 Pac. 388.

The second contention is equally wanting in merit. It is based on alleged statements made by the owner (now deceased) some twenty years before the trial. One witness said that the owner stated in his presence that "it was an old county road"; another witness, that he said, "I have taken twenty feet here for a street," indicating the strip in controversy. The third witness said that the statement was that "he laid out twenty feet for a driveway." The plat shows it to be a part of a lot, and the owner expressed no intention to dedicate, to any member of his family.

Union Lake addition was platted in 1883. The supplemental plat was filed in 1888. In 1879 a road was laid out extending from the city proper along the easterly slope of Queen Anne hill to what was then Fremont. In 1889 or 1890, Westlake avenue was opened for travel. In 1890 Dexter avenue was graded. Thereafter these streets were the principal thoroughfares between Seattle and Fremont, and other points to the north. Block 7, in which this lot is situated, is on the easterly side of Queen Anne hill, and is bounded on the east by Dexter avenue, a street running north and south, and on the south by Garfield street, which runs east and west. Block 8, which lies immediately west of this block, touches Seventh avenue north on the west. There is an alley between blocks 7 and 8, extending from Garfield street on the south to an unplatted tract on the north. The court found that the strip of land in controversy was not a public highway by prescription or otherwise. The view of the trial court may best be had by a reference to his opinion. He said:

"The satisfactory testimony to my mind shows that this strip of twenty feet was not within the limits of the old road as originally laid out. . . . It is well known to everybody who has lived in Seattle a long time that the land which was in the city, unplatted, and even a great deal of it after it was platted, was crossed by people living in the vicinity where it was convenient for them to go, and by license of the owner. A great deal of land has been platted after these old roads

were used, and if the city were to undertake to claim and establish as a highway all of these trails and roads that had been used, the whole plat of the city of Seattle would be out of harmony.  It would be a confiscation of private property without any advantage, because the use subserved originally by those old roads has now been supplied by the streets and alleys that have been laid out over the platted property. . . . It would be impossible for the court, under the testimony, to locate exactly where this road did run with reference to this lot 5, if it ran over lot 5 at all.  I am inclined to think it did touch lot 5, or a part of it, but where, it would be impossible to say under this evidence, and in my opinion this road is not an old county road, but one of those licensed roads that the people around there followed without any objection. . . ."

This view is abundantly supported by the evidence.  The record shows numerous roads and temporarily traveled ways running promiscuously through blocks 7 and 8.  Some of the city's witnesses said that there was a "plain wagon road" along the north twenty feet of lot 5.  Others said it was "a well-defined road."  Some of the defendant's witnesses said "I would call it a trail."  Others referred to it as a "dog trail."  The foreman in charge of the work for the contractors who regraded Dexter avenue testified that at that time (1911) "there had been a road there apparently," "just room for a wagon"; that it had not been traveled to any extent, and that "it looked like a trail."  The writer is convinced from a reading of the entire record that this road, wherever it ran, was little used after the opening of Westlake avenue in 1889 or 1890, and the opening of Dexter avenue in 1890. Its use was confined to a few people living in blocks 7 and 8.  It was a mere convenience road, used by the sufferance of the owners of the legal title.  Nor can we say that there is a preponderance of evidence to the effect that it ran along the north twenty feet of lot 5 at any time.  As the trial court observed, it may have touched the northeast corner of lot 5.  It is needless, however, to pursue the question further.  The evidence is in hopeless conflict as to where the road ran in lot 5, if it touched it at all.  We are convinced

that no right was gained by prescription. The observation of the trial court that these trails and convenience ways were used by the people of Seattle by the sufferance of the owners on platted and unplatted tracts, while unoccupied, is in harmony with the practice in other communities in the state. Many such roads may be seen on unoccupied platted tracts in other towns, and yet it would not occur to any one that these trails or ways of convenience were intended as streets or alleys. In 1879, when the Fremont road was laid out, Queen Anne hill was a wilderness, and Fremont was a logging camp. The hill was logged off between that date and 1890. During that period the people in that vicinity followed the lines of least resistance when traveling. After 1890 practically all the travel in that locality was upon Dexter and Westlake avenues.

Before the commencement of the action the city had provided a crossing and rounded the curb in front of the property in controversy. The decree directs that these be removed. The method of improving streets where the structure is not unlawful is a political question, with which the court may not interfere. Rem. & Bal. Code, § 7507 (P. C. 77 § 83); *Spokane Street R. Co. v. Spokane*, 5 Wash. 634, 32 Pac. 456. The decree will be modified to this extent. The cause will be remanded with instructions to eliminate from the decree the following:

"The city of Seattle and its board of public works are hereby ordered and directed to remove the curbs placed in the gutter in front of the north twenty feet of the above described property, and to place therein a continuous gutter within sixty days from the date hereof."

Neither party shall recover costs in this court.

CHADWICK, MOUNT, and PARKER, JJ., concur.