[No. 12128.   *En Banc.*   March 26, 1915.]

*In the Matter of the Assessment for* LOCAL IMPROVEMENT
SEWER DISTRICT No. 1 OF THE CITY OF CHEHALIS.
W. J. MURPHY, *Appellant,* v. P. SUMMERSETT *et al.,*
*Respondents.*[1]

MUNICIPAL CORPORATIONS — ASSESSMENTS — APPEAL — NECESSITY.
The general local improvement law, 3 Rem. & Bal. Code, § 7892-1 *et
seq.*, providing for notice to abutting owners of a hearing upon as-
sessment rolls for local improvements, and for appeals to the su-
perior court, and providing (§ 7892-70) that rights of action under
existing laws, not commenced at the time the act takes effect, shall
proceed under the provisions of the act, supersedes the prior acts
whereby the property owners could obtain relief by an action in
equity, and owners must now appeal or abide by the decision of the
council, where the act went into effect before the assessment roll
was made out, although the proceedings were commenced prior
thereto under which the contract for the work was made.

SAME—ASSESSMENTS—APPEAL—CHANGE OF PROCEDURE—RIGHTS OF
CONTRACTOR. Although the new act could not affect any of his rights
under his contract, a contractor for a local improvement has no
such interest in the procedure by which the rights of the parties
assessed could be asserted by action in equity, as to be able to ob-
ject to a change in the procedure requiring owners to appeal to the
superior court from a confirmation of the assessment roll, which
manifestly did not prejudice his rights under his contract.

JUDGMENTS—RES JUDICATA—MATTERS AND PARTIES CONCLUDED. A
judgment in mandamus, at the suit of a contractor against a city,
compelling the city to levy an assessment to pay the cost of a local
improvement, is not *res judicata*, upon an appeal by a particular
property owner, upon the question of the amount of benefits, if any,
legally assessable against his property, he not being a party to the
former action and the question of benefits not being there involved;
the former decision being merely that property owners were liable
for assessment to the extent of the benefits received by them.

Appeal from a judgment of the superior court for Lewis
county, Edward H. Wright, J., entered April 20, 1914, upon
findings in favor of the defendants, setting aside an assess-
ment for a public improvement, on appeal by property owners
from the confirmation of the assessment roll.   Affirmed.

[1]Reported in 147 Pac. 199.

*Boyle, Brockway & Boyle* and *Forney & Ponder*, for appellant.

*Preston & Thorgrimson* and *C. A. Studebaker*, for respondents.

PARKER, J.—This is an appeal by W. J. Murphy from a judgment of the superior court for Lewis county, setting aside and cancelling special assessments levied by the city commission of the city of Chehalis upon property of P. Summersett *et al.*, to pay the contract price claimed by Murphy to be due him for the construction of sanitary sewers in streets upon which such property fronts. The controversy came into the superior court by appeals prosecuted by Summersett *et al.* from the levy and confirmation of the assessments by the city commission. Murphy was brought into the case as a party thereto in the superior court at the instance of the city, he being the contractor in whose interest the assessments were levied, and the decision of the superior court being adverse to his interests, he has appealed therefrom to this court. The city has not appealed. The city of Chehalis adopted the commission form of government, after creating this local improvement district and before the making of this assessment roll, so the word "commission" as here used means the same as "council."

It is first contended by counsel for Murphy that the superior court erred in assuming jurisdiction to entertain the appeal of Summersett *et al.* from the levy and confirmation of the assessment by the city commission, because, at the time of the creation of the local improvement district and the entering into the contract with the city by Murphy for the construction of the improvement, there was no statute in force in this state authorizing such appeal. In the summer of 1910, proceedings were regularly taken by the city providing for the construction of the improvement and the creation of the local improvement district looking to assessing the cost thereof against the benefited property. The

contract for the construction of the improvement was there-
after duly entered into by the city with Murphy in Janu-
ary, 1911, by which he was to complete the improvement on
or before November 1, 1911.   He claims to have completed
it and that it was accepted by the city on October 30, 1911.
It is plain from the provisions of the resolution and ordi-
nance providing for the improvement and the creation of the
local improvement district that no part of the contract price
was to be paid and no assessment levied therefor upon the
abutting property until after completion of the improve-
ment and the acceptance thereof by the city.   Hence there
could be no right on the part of Murphy to have the as-
sessment made prior to October 30, 1911.   Prior to June
7, 1911, there was no statute in force providing for direct
appeal to the courts from the confirmation of local assess-
ments by cities of the third class, to which class the city of
Chehalis belongs.   The remedy the property owners had
against an illegal and erroneous assessment was by an ac-
tion on the equity side of the court to set aside the assess-
ment, or by way of defense, in an action by the city seeking
foreclosure of the assessment lien.   On that day, however,
there became effective the general local improvement law of
1911 (Laws 1911, p. 441, ch. 98; 3 Rem. & Bal. Code,
§ 7892-1 *et seq.*), applicable to cities of the third class, as
well as other cities and towns in the state, providing, among
other things, in substance, that, whenever any assessment
roll for local improvements is made it shall be filed with the
city or town clerk; that the city council shall thereupon fix
a date for the hearing of objections of property owners to
the assessments sought to be so made, notice of which shall
be given to the property owners, and that upon final de-
cision of the council confirming the roll, after such revision
thereof as the council may make, any owner of property
deeming himself aggrieved by such assessment may appeal
therefrom to the superior court; where the decision of the
council may be affirmed or modified or the assessment en-

tirely annulled in so far as the same affects the property of the appellant. Laws of 1911, pp. 452, 453, §§ 21, 22 (3 Rem. & Bal. Code, §§ 7892-21, 7892-22).

It is apparent from the reading of this law that the property owner has a right, both before the council and in the courts upon appeal, to be heard upon the questions of benefits flowing from the construction of the improvement to his property and the proper apportioning of benefits between his property and other property in the district. Prior to the passage of this law, the property owner was not awarded a hearing before the council in cities of the third class, nor upon direct appeal to the courts; but the law did award him an opportunity to contest in the courts the validity of an assessment sought to be made against his property, upon the ground of want of benefits as well as other grounds. The effect of this law, in so far as we are here concerned with its provisions, is only to change the method of procedure by which the property owner may assert his rights as against an erroneous or void assessment.

The repeal provisions of this law render it plain that it supersedes all laws and methods of procedure touching local assessments by cities and towns. Section 70, Laws 1911, p. 480, provides:

"All rights of action under existing laws which this act in any way supersedes or repeals, if the same at the time of taking effect of this act shall not have been commenced, shall proceed under the provisions of this act." 3 Rem. & Bal. Code, § 7892-70.

We have seen that Murphy's right to have an assessment made to pay the cost of the improvement could in no event have accrued until October 30, 1911, when he claims to have completed his contract. This law was in force several months prior to that date. It seems plain to us that it was proper for the city council to proceed with the making of the assessment roll and the hearing thereon in compliance with the provisions of this law, and that Summersett et al. had the

right of appeal to the courts as therein provided. Of course, Murphy's rights, secured by his contract with the city for the construction of the improvement, could not be affected by any law passed subsequent thereto, but we think he had no such interest in the mere method of procedure by which the property owners' rights might be asserted as against the assessments as would prevent the legislature from providing this different method of procedure in that respect, which manifestly did not prejudice Murphy's right under his contract in the least. This law does not accord to the property owner any rights as against Murphy superior to those possessed by the property owner under the prior law. Indeed, under this law, the property owner is required to make his objections to the assessment within a definite limited time, or submit to the confirmation of the assessment by the council as a final adjudication against him. Such was not the case under the prior law; but the property owner, not having notice of hearing before the council touching the validity of the assessment, had an indefinite time, measured by many varying circumstances, to challenge the validity of the assessment in the courts. This new procedure is more conducive to a prompt and final settlement of the question of the validity of the assessment than the old law was. Surely there is nothing in this for Murphy to complain of. We conclude that Summersett *et al.* not only had the right of appeal from the decision of the city council confirming this assessment roll, but that they were by law required to so appeal or abide the decision of the council as final against them.

It is next contended by counsel for Murphy that all questions raised and determined upon the appeal of Summersett *et al.* to the superior court in this case had theretofore been finally determined and became *res judicata* as against them by the prior judgment of the superior court for Lewis county and the decision of this court affirming the same in the mandamus case of *State ex rel. Murphy v. Coleman*, 71

Wash. 15, 127 Pac. 568. Neither Summersett nor any other owner of property within this local improvement district was made defendant in that action. Indeed, it may well be argued that they could not have been, in view of their right to be heard before the council and upon appeal therefrom to the superior court, in so far as there could be affected by the judgment in that case the question of benefits resulting to their property from the construction of the improvement and the proper apportionment thereof. We pass this question, however. It is enough for our present purposes to know that the city commissioners of the city of Chehalis were the only parties pretended to be made defendants in that case.

It is now insisted, however, by counsel for Murphy that the city commission was in effect there defending not only for the city, but for all the owners of property within the local improvement district, upon substantially the same grounds as are here urged by Summersett *et al.* against the levying of an assessment against their property to pay the contract price of the improvement, and that therefore the judgment rendered in that case requiring the city commission to proceed with the making of the assessment was in effect a final judgment, binding alike upon all the owners of property within the district as well as upon the city, as to all possible objections which might be made by these owners against the assessments, including the question of benefits, excepting only the mere apportionment of such benefits to the several lots and tracts within the district. We shall not attempt to draw any distinction between the issues involved in that mandamus case against the city commission and the issues here involved, aside from the mere difference in parties. It might be well argued that the final judgment rendered against the city commission in that case, read in connection with the language of the alternative writ of mandamus therein, does not in terms amount to an adjudication upon the question of the ultimate power of the city com-

mission to levy assessments against the property of Summersett *et al.* We pass these questions and assume, for argument's sake, that the rights of Summersett *et al.* are saved from the effects of that judgment only by the fact that they were not parties to that action.

Counsel for Murphy invoke the general rule that a final judgment rendered by a court of competent jurisdiction for or against a municipality, adjudicating a matter of general concern to its citizens and taxpayers, is binding alike upon the municipality and all of its citizens and taxpayers in so far as there is thereby adjudicated such matter of general concern, in the absence of fraud or collusion attending the rendering of such judgment. This doctrine has been recognized and adhered to by this court in *Stallcup v. Tacoma,* 13 Wash. 141, 42 Pac. 541, 52 Am. St. 25, and *State ex rel. Forgues v. Superior Court,* 70 Wash. 670, 127 Pac. 313. When it is sought to bind a citizen or taxpayer of a municipality by the application of this doctrine, it must be remembered that he is not, by such a judgment, precluded from asserting any right which he holds as an individual peculiar to himself and which he does not share with the public. This limitation of the doctrine is noticed in the text of 23 Cyc. 1269, quoted with approval by this court in *State ex rel. Forgues v. Superior Court, supra.* Now the right of the owner of property which is sought to be charged by special assessment with a portion of the cost of a local improvement to have the amount of such charge limited by the value of the benefits resulting to his property, as well as to have the whole cost apportioned between his and other property in proportion to benefits, is a right peculiar to himself and not shared with others. True, all other owners of property sought to be assessed have the same right accorded to them by law, but each has the privilege of asserting his right independent of all others, in so far as there may in any manner be drawn in question the amount of the benefits resulting to his property. There has come to our

notice only one decision of the courts dealing with the attempted application of the doctrine invoked by counsel for Murphy to special assessments which we regard as directly in point here, and that is the decision of the supreme court of Wisconsin in *Rork v. Smith*, 55 Wis. 67, 12 N. W. 408. In the controversy there involved, there had been rendered a judgment in a mandamus proceeding awarding a peremptory writ against the common council of the city of Appleton, commanding them to reassess a special tax of $81.11 upon a certain tract to pay in part for the grading of the street upon which it fronted, a prior assessment having been set aside. It seems that no notice of hearing or direct appeal from the local assessments to the courts was awarded by the statute of Wisconsin to the property owner, but he had his remedy in equity, either by suit to cancel the assessment, or by way of defense, when foreclosure of the assessment might be attempted, the same as those rights might be asserted by a property owner in this state prior to the passage of our local improvement law of 1911. After levying of the reassessment in compliance with that mandamus judgment, Rork brought an action in equity to set aside the assessment, resulting in a judgment in the trial court in his favor. One of the grounds upon which it was insisted that such judgment was erroneous was that the mandamus judgment against the city council was binding upon Smith, the property owner, as well as the city, rendering the assessment *res judicata* as against him. Disposing of this contention upon appeal, the supreme court, at page 73 of the official report thereof, said:

"In the case of the *mandamus* proceedings it seems to us very clear that the common council did not represent the rights of the plaintiff. The proceeding was a direct proceeding to charge the plaintiff's property with the payment of a claim owned by the defendant *Reeder Smith*, and which he claimed was chargeable to and payable out of the property of the plaintiff. The plaintiff was the only one interested in resisting the claim of *Smith*; and if he can be barred

of his right to contest the validity of the charge by a proceeding to which he is not a party and of which he has legally no knowledge, it would seem to be contrary to the well
settled rule of law that no person is bound by any judgment
in an action to which he is not a party unless he claims his
right under some one who was a party thereto.  This case
cannot be governed by the rule which binds all the tax-payers of a municipality by the judgment of a court of competent jurisdiction declaring that the claim of the party
against it is a valid claim.  In the case of a claim made
against the city, town, county or other municipality, the
claimant cannot make the tax-payers, to whose property he
must ultimately resort for the payment of his claim, parties
to his action to determine its validity; and the municipality
in its corporate capacity is the party with which the contest
must be made.  In an action of that kind the municipality,
by its officers, represents the rights of the tax-payers whose
property must ultimately pay the demand.  The claim, in
such case is a claim against the municipality and not against
the tax-payers; but when established against the municipality, the property of the tax-payer becomes bound to pay
his quota of the tax necessary to discharge the debt.  This
is all that was determined in the case of *Clark v. Wolf*, 29
Iowa, 197, cited by the learned counsel for the respondent.
In the case at bar, *Smith* had no claim against the city of
Appleton; he had simply the right, if he had any right, to
invoke the action of the city authorities to aid him in enforcing his claim against the property of the plaintiff; and
the fact that he compelled them to act by the writ of *mandamus* can give no more force to their action than if it had
been done voluntarily, unless the party to be affected by their
action was also made a party to the proceeding.  They were
the mere agents of the holder of the claim to enforce it
against the plaintiff; and if they had no legal right to enforce the claim, the plaintiff must have the right to contest
its validity when the attempt to enforce the same is made in
a way which affects his rights."

No decision relied upon by counsel for Murphy lends
more substantial support to their contention than that of
*Ashton v. Rochester*, 133 N. Y. 187, 30 N. E. 965, 31 N.
E. 334, 28 Am. St. 619.  The question there decided is

stated in substance in the syllabus to the official report of that case as follows:

"Where a writ of mandamus is awarded by a competent court against a board of officers of a municipality, having power to let contracts for works of local improvement, requiring them to let such a contract, and it is let in obedience to such a command and a local assessment duly made to defray the expenses, the power of the board to let the contract may not be questioned subsequently by the taxpayers in a collateral proceeding."

A reading of that opinion will show that there was not involved any question of benefits nor of the apportionment thereof against lands sought to be assessed to pay the cost of the improvement. The property owners were endeavoring to set aside and enjoin the collection of the assessment because of irregularities going to the question of the jurisdiction of the council to let the contract and proceed with the improvement; questions which affected all the owners of property to be assessed alike, and placed the property owners, according to the views of the court there expressed, in the same relative position as general taxpayers when there is drawn in question the validity of the levy of a general tax they might be called upon to pay. We do not think that decision is controlling here, where there is involved, in its final analysis, the question of the amount of benefits, if any, resulting from the construction of the improvement to the abutting property of *each particular owner of the several lots and tracts sought to be assessed.* The fact that the city and its officials might be estopped by that judgment upon all questions, or even that the property owners might be estopped by that judgment upon questions other than those of benefits, we think is not at all conclusive that they would be estopped from asserting this right which each holds as an individual peculiar to himself and not in common with others. One owner of property might be benefited to the full extent claimed, while another owner might not be ben-

efited at all.  The right of the property owner to be heard
as to the amount of benefits resulting to his property is not
foreclosed by this mandamus judgment, whatever may be
held as to its finality upon other questions.

Some remarks were made by this court in *Shaw & Hodgins
v. Waldron*, 55 Wash. 271, 104 Pac. 272, 28 L. R. A. (N.
S.) 735, which might seem somewhat in harmony with *Ashton v. Rochester, supra.*  The decision in that case, however,
was upon the question of the statute of limitations as affecting the right of those entitled to have a reassessment
levied to pay their claims, it being decided that the running
of the statute was stayed by the commencement of an action
against the city authorities to compel the levy of such an
assessment.  The view that a judgment against the city in
such an action, upon that question, binds also the owner of
the property to be assessed, does not by any means lead to
the conclusion that judgment rendered against a city, like
in this case, would be binding upon the owners of property
to be assessed, in so far as the question of benefits to the
particular property of each and the proper apportioning
thereof is concerned.  Even in litigation involving the validity of a general tax, where the rights of the taxpayer may
be finally adjudicated against him in a suit by or against
the municipality, he is not thereby precluded from questioning the valuation put upon his property for the purpose of
measuring the amount of the tax he may be required to pay.
Upon this question, he is usually accorded the right to be
heard before a board of equalization, and he may also question it in a court of equity upon a proper showing.  This
is an individual right which he does not share with the public
or other taxpayers, however much he may share with others
his right to question the incurring of the indebtedness and
the power to levy such a tax.  It is necessary to a correct
viewpoint of this case to remember that each objecting property owner is resisting the particular assessment against
his own property, and that the controversy, so far as he is

interested therein, is as if he were the only property owner objecting to the assessment.

In the late case of *State ex rel. Murphy v. Wright*, 76 Wash. 383, 136 Pac. 482, wherein it was sought to prohibit the prosecution in the superior court for Lewis county of the appeal of Summersett *et al.* from the decision of the city council confirming this assessment, upon the ground that the assessment had been rendered *res judicata* as against Summersett *et al.*, this court, referring to the mandamus case against the city commission, said:

"We think there can be no doubt that, if the issues adjudicated in *State ex rel. Murphy v. Coleman, supra,* were finally decided and are binding upon the property owners, still the property owners have the right to contest before the commissioners the amount of the assessment levied against their lots. The statute gives them this right. Rem. & Bal. Code, § 7961; Laws of 1911, p. 452, § 21 (3 Rem. & Bal. Code, § 7892-21). The adjudication in the case above mentioned did not and could not go further than to determine the liability of the property owners to pay the cost of the improvement to the extent of the benefits received by their property; and they clearly have the right under the statute to have that question determined in the proper forum."

In view of the fact that the writ of prohibition there sought was denied by this court upon the ground that Murphy had the right of appeal from any decision of the superior court rendered in that proceeding, it may be suggested that the above quoted remarks of the court were to some extent dictum. We are of the opinion, however, that this is the law governing the rights of Summersett *et al.* We conclude that the judgment of the superior court for Lewis county, which was affirmed by this court in the mandamus case requiring the city commission to proceed with the levying of assessments, was not, and could not have been, *res judicata* of the rights of Summersett *et al.*, in so far as the question of benefits and apportionment thereof is concerned.

It is finally contended by counsel for Murphy that the

evidence presented to the superior court in this case calls for the conclusion that the several lots and tracts owned by Summersett *et al.* were in fact benefited to the extent of the several assessments apportioned thereon by the assessment roll made and confirmed by the city commission in obedience to the mandamus of the superior court. This presents questions of fact which we are convinced must be resolved in favor of Summersett *et al.* It is apparent from record of the proceedings had before the city commission in the making and confirmation of those assessments that the commission proceeded upon the theory that it was by that mandamus compelled to assess the entire contract price of the improvement upon the property within the district, and apportion the same to the property of Summersett *et al.*, regardless of its opinion as to whether or not such property was actually benefited. In this confirmation ordinance they make preliminary recitals amounting, in substance, to findings, as follows:

"Whereas, it appears to the city commission that said sewer has not been built in substantial conformity with said ordinance No. 345 and the contract, plans, and specifications, and that it will require the expenditure of more than twenty-eight thousand dollars to complete said sewer in accordance with said ordinance and contract; and, further, that no provision has been made for completing said sewer and that until it is completed said sewer cannot be used by the property owners in said district, and that in case said sewer is never completed the property in said district will receive no special benefits whatever from the same; and, further, that in case it should be completed in the immediate future the entire benefits flowing to the property in said local improvement district from that portion of the sewer now constructed would not exceed the sum of twenty-eight thousand dollars; and said commission further finding that as a matter of law it is bound by the mandate of the court to approve an assessment roll for the full contract price, with extras, not exceeding the estimated cost of fifty-six thousand dollars, notwithstanding the fact that said sewer is

not completed and the property does not receive special benefits in said sum of twenty-eight thousand dollars."

Reference to the decision of this court in the mandamus case of *State ex rel. Murphy v. Coleman, supra,* will show that the city was prevented from questioning the completion of Murphy's contract and the proper construction of the improvement because of the acceptance of the work by its city. engineer; the substance of the decision being that the city, by estoppel, lost its right to so question the proper construction of the improvement. Were the improvement to be paid for from the general funds of the city, the result would probably have been to fix an obligation upon the city to pay the contract price. After hearing a large amount of evidence upon the question of the proper completion of the improvement and its possible use to the property of Summersett *et al.,* sought to be assessed, the superior court found:

"That the said defendant W. J. Murphy did not build said sewer in substantial conformity to the contract, plans and specifications and by reason thereof said sewer, as left by said defendant W. J. Murphy, could not be used and was not usable for the purposes for which the same was designed, or any other purpose. That the sewer as constructed by the said W. J. Murphy was not and is not usable by these appellants or other property owners in said district and did not and does not now confer any special benefit whatsoever upon appellant's said property, and appellant's said property or any portion thereof has not been benefited in any manner whatever by the construction of said sewer. That in order to substantially complete said sewer in accordance with the plans and specifications it is necessary that a large portion of the same be dug up and relaid at an expense of many thousands of dollars, and until such work is done no portion of said sewer can be used. That the said city of Chehalis has made no provision whatsoever for the completion of said sewer or any part thereof."

Now this assessment roll does not come to the courts with the strength of that presumption as to the benefits usually

attending the making of an assessment roll, in view of the commission's findings made in connection with the confirmation of the roll.  Having in mind this fact, and having read all evidence produced before the superior court touching the question of benefits resulting to the lots and parcels of land belonging to Summersett *et al.*, we cannot escape the conclusion that the trial court made correct findings, as above quoted, upon that subject.  Counsel for Murphy strenuously argue, in substance, that this conclusion can be reached only by the aid of evidence tending to show failure to complete the work according to the plans and specifications. This question they insist is of such nature as to involve rights common to all owners of property in the district, which became finally adjudicated against all such owners by the mandamus judgment against the city commission.  There may be a sense in which this is true, but in so far as evidence of want of proper completion of the contract lends support to the contention of Summersett *et al.*, that *their lots and tracts* were not benefited by the improvement, we are of the opinion that they were entitled to produce evidence of such fact.  The real issue is the amount of benefits resulting to the several lots and tracts of Summersett *et al.*  Upon this issue they were not foreclosed, nor were they foreclosed upon any question of fact relevant to this issue.  If the question of benefits were not here involved, the force of the mandamus judgment as against Summersett *et al.* might possibly be as claimed by counsel for Murphy.

We cannot escape the conclusion that the trial court properly disposed of the rights of the parties by its judgment setting aside and canceling the assessments against the property of Summersett *et al.*, the objectors, and that therefore the judgment must be affirmed.  It is so ordered.

We do not desire to be understood as expressing any opinion in derogation of any right which may accrue in the future in favor of the city to make, or on the part of Murphy to have made, a reassessment to pay the cost of constructing

this improvement, in the event it is ultimately constructed by Murphy so as to result in such benefits as will support an assessment against the property of Summersett *et al.*, or ultimately completed by the city so as to result in such benefits as will support an assessment against the property of Summersett *et al.* within the rule announced by us in *Mallory v. Olympia*, 83 Wash. 499, 145 Pac. 627, where the city received the benefit of an uncompleted contract and thereafter made the work conform to its needs. We simply hold that the particular property of Summersett *et al.*, not being benefited in any degree by the improvement in its present condition, is not at this time subject to assessment, whatever the liability of such property may be in the future. We construe the judgment of the superior court as meaning no more than this. Indeed it may well be doubted that the superior court had jurisdiction to do more than this.

We also desire to be understood as expressing no opinion touching the possible right of Murphy to recover damages against the city arising from its fault, if any, resulting in its inability to make an assessment to pay for the improvement.

MORRIS, C. J., HOLCOMB, MOUNT, MAIN, ELLIS, and CROW, JJ., concur.