[No. 13750.  *En Banc.*  February 8, 1917.]

*In re* SHILSHOLE AVENUE.

BOLCOM MILLS, INCORPORATED, *et al., Respondents,*
v. THE CITY OF SEATTLE, *Appellant.*[1]

MUNICIPAL CORPORATIONS—LOCAL IMPROVEMENTS—ASSESSMENTS—
APPEAL—PROCEEDINGS—FINDINGS.  Upon appeal from an assessment
for benefits for a local improvement under the act of 1911 (3 Rem. &
Bal. Code, § 7892-22), providing for trial without a jury and that
the court shall confirm, correct, modify or annul the assessment, the
appeal vests the court with plenary jurisdiction of the whole ques-
tion of special benefits, to be tried upon evidence, and findings of
fact are not only appropriate but necessary unless waived.

SAME—LOCAL IMPROVEMENTS — ASSESSMENTS — REVIEW—LEGISLA-
TIVE AND JUDICIAL QUESTIONS.  Under 3 Rem. & Bal. Code, § 7892-13,
which provides that the property within a local improvement district
shall be considered and held to be all the property specially bene-
fited and shall be assessed to pay the cost, or such part thereof as
may be chargeable against the property benefited, the legislative
determination by a city council of public necessity has no bearing
upon the question of special benefits, which is a judicial question,
under Const., art. 7, § 9, vesting the corporate authorities with the
power to make local improvements by special assessment or taxa-
tion, and under the statute, Id., §§ 7892-21, 7892-22, providing for a
judicial review of the question of benefits.

SAME.  The only questions to be reviewed under such statutes are
the questions of direct or special benefits and the amount thereof on
the property included within the district; and property not benefited
cannot be assessed, nor can property be assessed for more than it is
benefited.

SAME—PROCEEDINGS—JUDGMENT—PARTIES BOUND.  Where a city
has been consolidated with another, the latter succeeds to the rights
and obligations of the former, as fixed by an award and judgment
in condemnation proceedings for a local improvement.

SAME — PROCEEDINGS — BENEFITS — JUDGMENT — RES ADJUDICATA.
Where, in proceedings to condemn the right to damage streets by
flooding up to a certain level, in which two elements of damage
were involved: first, injury to the streets themselves and the cost
of restoring them to public use so as to be above the potential water
level, and second, the injury to abutters from the raising of the
level of the streets above the abutting property, and the city has

[1]Reported in 162 Pac. 1010.

been paid the award for the damage to the streets, it is under obligation to restore them to public use, and cannot levy special assessments for the same improvement again; at least not without crediting the amount received and showing any necessary additional cost not awarded and collected; and where this was not done, the proceeding and judgment in a former assessment is *res adjudicata* of the question involved and decided therein, and is a bar to any further assessment for raising the level of the street.

ELLIS, C. J., MORRIS, and MAIN, JJ., dissent.

Appeal from a judgment of the superior court for King county, French, J., entered February 29, 1916, upon findings in favor of the plaintiffs, on appeal from the decision of the city council confirming an assessment for a public improvement, tried to the court. Affirmed.

*Hugh M. Caldwell* and *Howard A. Hanson*, for appellant.

*Donworth & Todd, Higgins & Hughes, J. P. Wall*, and *W. W. Wilshire*, for respondents.

HOLCOMB, J.—In this matter about sixty individuals and companies, upon whose property the assessment involved had been laid by the city under an ordinance No. 30,389, for the special benefits by the physical filling and other improvements of Shilshole avenue and other streets, avenues and approaches thereto, appealed to the superior court from the action of the city council in confirming the special assessments against their lands. As to these property owners, who are the respondents here, the judgment of the superior court either reduced in amount or wholly canceled the assessments that had been confirmed against their respective properties. The property owners all acquiesced in the judgment of the superior court, although that judgment confirmed the assessments against many lots which were the subject of contest in the court below and merely reduced many other assessments which the property owners contend should have been wholly canceled.

The proceeding is under the local improvement statute of 1911, Laws 1911, p. 441, now embodied in 3 Rem. & Bal.

Code, §§ 7892-1 to 7892-72. In a former case, *In re Shilshole Avenue*, 85 Wash. 522, 148 Pac. 781, involving an assessment roll made in eminent domain proceedings by the eminent domain commissioners of the city of Seattle to pay the damages resulting from the raising of the grade of Shilshole avenue and the incidental change of the grades of other streets and avenues and approaches thereto, will be found a succinct statement of most of the conditions and situations existing in this proceeding as shown by the record, and an announcement of the law as to certain questions involved therein and which seem to be involved in this appeal. The entire record in that case, including the decision and remittitur from this court, were introduced in this case. The trial judge who tried the former proceeding also tried this, and in determining the matters involved in this case, deemed that he was following the law of the case as settled by the decision in the former case as to the question of special benefits involved by this improvement.

Ninety-five errors are assigned by appellant in this case, but they are reducible to two principal questions, which are urged by the appellant in argument. They are these: (1) The effect in this case of the findings of fact in the condemnation assessment hearing which was involved in the former appeal; (2) the legal status created between Seattle and the lot owners by the King county canal judgment on verdicts.

It is first vigorously contended that the determination of necessity for and the character of the improvements is a legislative function to be, and which was, determined by the legislative authority of the city. In this respect the city contends that the physical grading of these streets and approaches was determined as a matter of necessity by the city, and that it was determined to have been necessary to grade the streets and approaches to certain heights above flooding for the purpose of sewering the property involved, and that the sewering of the abutting property required

filling to such elevations. This theory the lower court rejected. The city also contends that it acquired the right to make such fills by an eminent domain proceeding under ordinance No. 29,834, pursuant to the act of 1907, Laws 1907, pp. 321, 325, §§ 15, 23, as amended by the act of 1909, chapters 210 and 211, Laws 1909, pp. 723, 724 (Rem. & Bal. Code, §§ 7782, 7790). That was the proceeding which was involved in the former appeal. In that case an assessment roll was prepared by the eminent domain commission, assessing the property assumed to be specially benefited to defray the costs of the improvement. Upon that hearing, certain findings were made, conclusions of law entered, and the assessment roll was set aside and the matter referred to the commission with instructions to prepare a new roll. Cross-appeals were taken. The city took no exceptions to the findings of the trial court. The judgment was reversed with instructions to cancel the assessments. See *In re Shilshole Avenue, supra.* A petition for rehearing, setting forth, among other points, that an order setting aside an assessment roll and directing the preparation of a new roll was not a final order and that this court had no jurisdiction thereof, was denied. Following this, the lower court entered an order canceling all eminent domain assessments and barring the city from levying any eminent domain assessments against any property involved in the first appeal. In this proceeding, the trial court held that the findings, judgment and remittitur of this court, which were admitted in evidence, were *res adjudicata* as to the parties and the issues involved therein; and the city is certainly one of the parties involved therein. Much of the reasoning in that case might with profit be reiterated here as decisive of much of this controversy.

His Honor ruled throughout that the determination of the city council that the improvement was necessary was binding upon the court and all parties, so far as concerned any attempt to stop the improvement or to interfere with the perfect freedom of the city to make or not to make it. In de-

termining the further question, viz., whether the abutting property was benefited by the improvement, he held that this was a question of fact to be determined by the court from the evidence and giving due weight and consideration to the presumptions raised by the acts of the city. The statutes referred to, relating to such local improvements, provide for an assessment roll, and require the city council to sit as a board of equalization for the purpose of considering such roll, and to correct and revise it and to confirm it by ordinance. In case objections were filed by any property owners, the council is required to consider and pass upon such objections. Section 22 of that act of 1911 (Laws 1911, p. 453, § 22; 3 Rem. & Bal. Code, § 7892-22) provides that the decision of the council or other legislative body, upon any objections made within the time and in the manner prescribed by the act, may be reviewed by the superior court upon appeal taken thereto. A trial of the matter by the court without a jury is provided. It is also provided that the judgment of the superior court shall confirm, correct, modify, or annul the assessment, in so far as the same affects the property of the appellant. It makes no provision for referring the matter back to the city council. It seems that the appeal vests the superior court with plenary jurisdiction of the whole question of special benefits.

The city seemed to contend, and seems to contend here, that the fact that the city has the legal right to determine at what grade it shall improve the streets deprives the court of power to consider the question of special benefits on the trial of the statutory appeal. The trial court proceeded upon the theory that, in determining the question of benefits, he must be governed by the evidence as to the character of the abutting property claimed to be specially benefited, having due regard to existing circumstances and requirements and those reasonably to be anticipated. He did not question the finality of the city council's decision of the necessity of the improvement, but when the city claimed that that deter-

mination was conclusive evidence of the benefits to the par-
ticular property involved, and that the particular grade
established by the city was necessary for the use and develop-
ment of the abutting property, he refused to be bound by
the legislative declaration of the necessity for the improve-
ment as a *determination of the benefits to accrue to the
abutting property.* In other words, he tried the case upon
the theory that the statutory appeal provided by the law
required him to examine into the facts as to the benefits to
accrue to the property involved and determine the matter
accordingly, and upon this theory he disposed of the case.

In so disposing of the case, appellant claims that he "fixed
a judicial grade," substituting it for the legislative grade
established by the city authorities. What the trial court
did, in substance, was to hold that the city had the undoubted
right to raise the grade of streets to any height that it de-
sired within reason, but an abutting property owner would
not be specially benefited by elevating the streets any more
than to place them in a dry and usable condition above the
height to which the water would be raised by the construc-
tion of the Lake Washington canal, following the finding
sustained in *In re Shilshole Avenue, supra.* In doing so he
grouped the properties according to the conditions shown to
exist, and as to the streets which had before been graded, he
canceled the assessments; as to streets which were before un-
graded, he directed that computations and estimates be made
of the cost of filling to elevations of nine and five-tenths feet
above city datum, to which height the city had acquired the
right to flood on account of the necessities of the Lake Wash-
ington canal; as to streets which were above the elevation
of nine and five-tenths feet, he allowed, as a special benefit,
the cost of merely surfacing such streets, and in both of the
last mentioned instances the cost of placing thereon and
therein such walks, gutters and other municipal improve-
ments as the city had provided for in this proceeding. He
then distributed this cost upon the abutting property as

local assessments are spread, and reduced the assessments levied by the city to such sums, which he then confirmed against the lots. The grades which had been established by the city for the streets, avenues and approaches were to an elevation of sixteen to eighteen feet above city datum. The court held, as a matter of law and of fact, that these grades were excessive grades, so far as the property owners were concerned, and did not confer any special benefits upon the abutting property. It is apparent that what the trial court attempted, at least, was to ascertain and determine from the evidence lines of demarcation between what were special benefits to the property affected and what were not, under the circumstances and situations of the various properties at the time.

The trial court made and entered very comprehensive findings of fact upon the evidence, resolving the evidence, where it was in conflict, in favor of the property owner in some instances and in favor of the city in others, to a greater or less degree, apparently keeping in view at all times in determining such questions the pronouncement by this court particularly in the former appealed cases. The findings of the trial court are amply supported by evidence, and whether findings are necessary at all in such a case, they are appropriate, and in this case constitute a valuable epitome of the great mass of evidence introduced. This being a statutory or law proceeding triable without a jury, we may say that findings are not only appropriate but necessary, unless waived.

Upon the question of the public use and public necessity, the many former holdings of this court are cited, on the initial question of the right to maintain eminent domain proceedings to acquire or to damage private property for public use, where we have held to the principle that, in original eminent domain proceedings, the determination of the question of public necessity by municipalities is conclusive upon the courts in the absence of fraud. This rule has been laid down

in many cases, all of which were collected and referred to in *Tacoma v. Titlow,* 53 Wash. 217, 101 Pac. 827, and afterwards referred to in *Tacoma v. Brown,* 69 Wash. 538, 125 Pac. 940, and adhered to in *Maggs v. Seattle,* 74 Wash. 323, 133 Pac. 388; *Spokane v. Merriam,* 80 Wash. 222, 141 Pac. 358, and *In re Appeal of North Yakima,* 87 Wash. 279, 151 Pac. 795. None of these cases hold or intimate that, in a proceeding to assess the benefits directly upon the property affected by the public improvement under the local improvement statutes, the legislative determination of necessity has any bearing upon the question of benefits or forecloses judicial inquiry upon that subject. On the contrary, the statute and the constitutional provision which supports the statute, providing that, "The legislature may vest the corporate authorities of cities, towns, and villages with power to make local improvements by special assessment, or by special taxation of property benefited" (Const., art. 7, § 9), clearly make the question of the direct or special benefits a judicial one and protect the citizen against an assessment in excess of the benefit. Dillon, Municipal Corporations (5th ed.), § 1439. The statute provides for a judicial review of the question of the benefits to the property affected. If the court had no other function than to confirm or register the decree of the city council as to what property was benefited and to what extent, there is no review, and the provision for removing the matter to the superior court for review is an empty formality. While the trial might be permitted and a mass of evidence introduced, it would be totally unavailing because the benefits would have been determined in advance by the city council and would necessarily be confirmed, which could be done without a trial or review. As we said in the former *Shilshole Avenue* case, at page 537:

"It is the basic principle and the very life of the doctrine of special assessments that there can be no special assessment to pay for a thing which has conferred no special benefit upon the property assessed. To assess property for a thing

which did not benefit it would be *pro tanto* the taking of private property for a public use without compensation, hence unconstitutional."

And in former cases, such as *In re Leary Avenue*, 77 Wash. 399, 138 Pac. 8, and *In re Fifth Avenue and Fifth Avenue South*, 66 Wash. 327, 119 Pac. 852, it was positively announced as "the duty of the court to inquire whether the property is assessed more or less than it is specially benefited."

Section 7892-13 of the statute under which these proceedings are maintained provides:

"All property included within said limits of such local improvement district shall be considered and held to be the property and to be all the property specially benefited by such local improvement, and shall be the property to be assessed and pay the cost and expense thereof *or such part thereof as may be chargeable against the property specially benefited by such improvement,* . . ."

Thus, the statute negatives any attempt to settle the question of special benefits as a legislative one.

In this proceeding all the public improvements were included within one local improvement district, and the appellant asserts that, because the right to take or damage part of the properties was acquired under different condemnation proceedings, the question of the assessment of benefits was determined to the extent of the properties affected in those condemnation suits and could not afterwards be reviewed in any proceeding. That situation does not present any other or different question. The benefits here assessed are assessed within one public improvement district. The statutes under which the city proceeded, referring more particularly to § 7892-21, provide for an equalization by the city council, with authority to correct, revise, raise, lower, change or modify the roll as shall be just and equitable, and the following, § 7892-22, then provides that:

"The decision of the council or other legislative body upon any objections made . . . may be reviewed by the su-

perior court upon an appeal thereto . . . The judg-
ment of the court shall confirm, correct, modify, or annul
the assessment in so far as the same affects the property of
the appellant."

This hearing in the superior court is, therefore, a trial
before the judge without a jury, a statutory proceeding, and
is a real and necessary trial on evidence. The only questions
to be reviewed by the superior court on such an appeal are.
the question of direct or special benefits and the amount
thereof on the property included within the improvement dis-
trict, as to which objections were made and an appeal taken
by the objectors to that court. Upon determining those mat-
ters, it is the duty of the court to confirm, modify, correct.
or annul the assessment in so far as the same affects the
property of the appellant. Property not benefited cannot
be assessed. *In re Elliott Avenue,* 74 Wash. 184, 133 Pac.
8; *Spokane v. Gilbert,* 61 Wash. 361, 112 Pac. 380; *Spo-
kane v. Fonnell,* 75 Wash. 417, 135 Pac. 211; *Aumiller v.
North Yakima,* 73 Wash. 96, 131 Pac. 470. Nor can the
property be assessed *for more* than it is benefited. *In re
Eighth Avenue Northwest,* 77 Wash. 570, 138 Pac. 10; *State
ex rel. Murphy v. Wright,* 76 Wash. 383, 136 Pac. 482;
*Murphy v. Summersett,* 84 Wash. 565, 147 Pac. 199; *Viegle
v. Spokane,* 78 Wash. 359, 139 Pac. 33; *In re Leary Avenue,
Seattle,* 77 Wash. 399, 138 Pac. 8; *Spokane v. Kraft,* 82
Wash. 238, 144 Pac. 286; *East Hoquiam Co. v. Hoquiam,*
90 Wash. 210, 155 Pac. 754; *In re Shilshole Avenue, supra;
Reynolds v. Cosmopolis,* 84 Wash. 660, 147 Pac. 407.

In the last mentioned case, it was stated that the respond-
ent property owner "had an adequate remedy under the stat-
ute, which gives the right to file objections to the assessment
roll, and an appeal therefrom. If the respondent has rights
which are being invaded by the amount of the proposed as-
sessment upon her property, they can be fully and ade-
quately protected by means of the appeal provided by the
statute." So, also, in *Seattle Mattress & Upholstery Co.*

*v. Seattle*, 69 Wash. 666, 125 Pac. 1013, it was stated that
the question there to be determined was one of special bene-
fits to be determined on the evidence.  In the *Leary Avenue*
case, where the court, upon an appeal by the property
owners, reduced the assessment fifty per cent in an eminent
domain proceeding, we said that we were unable to say that
the court did not arrive at a correct decision upon that ques-
tion.  In *In re Fifth Avenue and Fifth Avenue South, supra,*
we said that the amount to be assessed against property
within the district and proper to be assessed was an appro-
priate subject of judicial inquiry, and, following a long line
of cases, the judgment of the court would not be disturbed
or modified unless the evidence so preponderates against the
judgment as to indicate an arbitrary disposition on the part
of the commissioners or the court.  In *Murphy v. Summer-
sett, supra,* it was said:

"The real issue is the amount of benefits resulting to sev-
eral lots and tracts of Summersett *et al.*  Upon this issue
they were not foreclosed, nor were they foreclosed upon any
question of fact relevant to this issue."

In *Ankeny v. Spokane,* 92 Wash. 549, 159 Pac. 806, it
was declared:

"All of the authorities agree that a local improvement to
be chargeable upon private property as such must possess
at least two essential elements; (1) the improvement must be
of a public nature, as contradistinguished from one purely
private, . . . and (2) it must confer a special benefit
on the property sought to be specially charged with its crea-
tion and maintenance, over and above that conferred gener-
ally upon property within the municipality."

Without multiplying authorities further, it is clear that
the trial court proceeded upon the right theory, notwith-
standing the contentions of appellant that there are facts
and circumstances in this case distinguishing it from any of
the cases herein cited.  In the assessments disturbed by the
court, the city had proceeded upon fundamentally wrong
bases.  As has been repeatedly declared, the ultimate ques-

tion to be determined is, what property was specially bene-fited by the improvement created by the city, and to what extent was it benefited. This the court determined upon evidence, and the evidence seems to justify his determination. The trial court, in fact, very carefully followed and applied the principles declared in the former case of *In re Shilshole Avenue, supra.*

The second proposition raised by appellant involved the introduction in evidence and the consideration of the verdict and judgment awarded to the city of Ballard in the former King county canal condemnation case. That case is also referred to in the former *Shilshole Avenue* case, *supra,* at page 524. It is there stated that:

"In that proceeding, the property owners received com-pensation for the flooding of their property, and the city of Ballard for the flooding of the streets. The amount allowed to the city was $7,500, which the city accepted and devoted to municipal uses. Subsequently, and some years prior to the proceedings here involved, the city of Ballard was an-nexed to the city of Seattle, which city succeeded to all of the property rights and obligations of the city of Ballard."

Two conclusions of law of the trial court are set out in full in the former opinion at pages 529 and 530, which more fully explain this matter.

At the time of the condemnation for the Lake Washington canal, the property of the city of Ballard, which was then a separate municipality, was condemned and the right ac-quired to damage the same by flooding up to a certain eleva-tion. The city of Ballard, as that record shows, in its an-swer, claimed the cost of restoring the streets, and obtained the verdict and judgment which was shown by the evidence as the jury's award therefor. It may have been a very in-adequate award, but it was the total award and, regardless of the amount thereof, was a judicial determination of the cost of restoration of the streets to a dry and usable con-dition up to a certain elevation, and was a final judgment

rendered by a court of competent jurisdiction. Afterwards, when the city of Ballard became a part of the city of Seattle, certainly the city of Seattle, as successor in interest of everything the city of Ballard had ever had, became possessed of all the city of Ballard's rights, including the award which had been made it and which had gone into its general fund and assets, and also succeeded to its rights or obligations to restore its streets which had been affected by those judicial proceedings. The proceedings and judgment in the case were, therefore, material and competent and were *res adjudicata* of the questions involved therein.

In that case, King county acquired the right to damage or injuriously affect the streets then in Ballard, now in Seattle and largely included within the present local improvement district, by flowage. The streets still retained their status as public highways, and the municipality still retained the right to restore them for street purposes above flood level. There was no perpetual destruction of access condemned and acquired, but only the injury to access resulting from the fact that the streets, when restored, would be at a higher level. There were, therefore, two elements of damage involved in that condemnation; first, the injury to the streets themselves and the cost of restoring them to public use so as to be above the potential water level; and second, the injury to abutters resulting from the fact that the streets when restored would have to be restored considerably above their old level. Unquestionably the municipality, rather than the abutting property owners, after having received its award for the damage to its streets, was under the obligation of restoring them or rendering them accessible after the flooding thereof; and the abutting property owners could not, and did not, receive any portion of that element of damage, that is, the award for restoring the streets to accessibility. *Schuchard v. Seattle*, 51 Wash. 41, 97 Pac. 1106; *In re Harrison Street*, 74 Wash. 187, 133 Pac. 8; *Hinckley v. Seattle*, 74 Wash. 101, 132 Pac. 855, Ann. Cas. 1915A 580,

46 L. R. A. (N. S.) 727. If the city has been paid once for the improvement, it cannot levy special assessments for the same improvement and be paid again. McQuillin, Municipal Corporations, § 2026, note.

The city now seeks to claim that the Ballard verdict affected only isolated portions of the streets. It was found in the former *Shilshole Avenue* case that the entire raise of grade throughout the Shilshole avenue district was caused by the canal raise, and the evidence in the present case demonstrates the same fact. Ballard, presumably, was awarded and collected all such street damage.

In the former *Shilshole Avenue* case, at pages 532, 533, it was said:

"The main contention of the appellant property owners is that the city having received compensation for the flooding of these streets in the old county condemnation suit, cannot assess the resulting damages for raising the grade of the streets against the abutting property. The city contends that, in contemplation of law, the property owners received pay in the old county condemnation for every damage to their property caused by the actual flooding of the property itself or the adjacent streets, and that the city only received compensation for the injury to its own interest, that is, the public easement in the streets; that both the property and the streets, immediately upon that condemnation, became potentially flooded to the depth of seven feet above datum, but that the grades, either actual or official, of the streets were not changed either physically or potentially. There is much force in the view that the potential condition which was then created, though surely necessitating some kind of an improvement by a change of grade, did not alter the legal relation either of the city or the abutting property to the streets or to each other in their relation to any future improvement of the streets, since the property owners had already received pay for the damage to their street access. We shall not, however, decide this question, since the view we take of the case in other particulars renders its decision unnecessary."

It will be seen, therefore, that the decision in the former case, while noting the conclusion of the trial court as to the

effect of the verdict in favor of the city of Ballard in the original condemnation proceeding, did not attempt to decide it, but decided that proceeding upon the other question, as stated on page 534 of the decision, that "the damages awarded in the condemnation proceeding were occasioned by that portion of the change of grade from a point slightly above the level of the water . . . to the present grades as established herein. That is to say, from about nine feet above city datum to about sixteen feet above city datum," and that "the added height above the level necessary to raise the streets slightly above water conferred no benefits upon the submerged property."

Although this question was passed in the former case as having no bearing in that proceeding, nevertheless it is material in this proceeding to assess special benefits for the physical improvement, under local improvement statutes, for the reason that it is conclusive as to damage being allowed to the former city of Ballard, now merged in the city of Seattle, for the submerged streets, avenues, and approaches involved in this local improvement district. It seems just in principle that the city, having already been paid for the improvement by the parties obligated under the law to bear its cost, cannot levy a special assessment upon the private property abutting, and collect payment for the improvement of restoring the streets to a dry and usable condition a second time, without at least first crediting the amount received and showing any necessary additional cost not awarded and collected, which it did not do or attempt.

We feel, therefore, that there was no error in the admission of the Ballard verdict and judgment based thereon, nor in the trial court's conception of the proper legal effect thereof.

Other minor questions are urged by appellant, which are either included in the two principal propositions determined or which we find of no substantial merit. On the whole rec-

ord, the judgment of the trial court is substantially right.

Affirmed.

MOUNT, PARKER, FULLERTON, and CHADWICK, JJ., concur.

MORRIS, J. (dissenting)—In the proceedings below, the trial court permitted inquiry into questions from which it sought to determine the reasons for the "necessity" of this improvement, going so far as to inquire into the character of the sewers to be built, both main and lateral; whether or not the grades proposed by the city were proper, or whether those proposed by respondents should be substituted; whether or not the city was justified in making provision for underground utilities, such as water and gas mains and conduits for electric wires; whether or not it would be sufficient, to meet the requirements of the improvement district, for the city to make a reduced fill rather than to adopt the elevations established in the condemnation ordinance. I have always understood, and still believe, that these are legislative and not judicial questions. The majority point to no authority which satisfies my mind that heretofore in so determining we have been in error. If it were profitable to prolong this dissent, many reasons might be suggested why this prerogative of common councils, in matters of this kind, should not be usurped by the courts. The error, to my mind, is so apparent it needs no reasoning to point it out. I therefore dissent.

MAIN, J. (dissenting)—I concur in the dissent written by Judge Morris.

ELLIS, C. J. (dissenting)—I concur in what Judge Morris has said. Moreover, it seems to me that the finding touching benefits in the condemnation proceedings has no bearing on the question of benefits resulting from the physical improvement.